**MOUNTAIN FUEL SUPPLY COMPANY, a corporation, Appellant (Defendant and Third-Party Plaintiff),**

**v.**

**CENTRAL ENGINEERING & EQUIPMENT COMPANY, a Wyoming Corporation, Appellee (Plaintiff),**

**and Gary Operating Company, a corporation, Appellee (Third-Party Defendant).**

**No. 5129.**

Supreme Court of Wyoming.

May 30, 1980.

Robert H. Johnson, Rock Springs, for appellant.

Harley J. McKinney, Pickett, McKinney & Smith, Rock Springs, for appellee Central Engineering & Equipment Company.

Calvin E. Ragsdale, Marty & Ragsdale, Green River, for appellee Gary Operating Company.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

This case involves a warranty on a natural gas compressor. The primary question is whether the district court correctly determined, both as to facts and law, when the ninety-day warranty on the compressor began to run. In addition, issues are raised as to whether there were implied warranties of merchantability and fitness for purpose in addition to the express ninety-day warranty, whether the district court correctly found the claim to be for a liquidated amount and awarding interest as a result, and whether the district court erred in not awarding damages for a counterclaim for loss of production of natural gas while the compressor was out of service during repairs.

We shall affirm the district court.

The appellant, Mountain Fuel Supply Company, solicited and received an offer from appellee, Gary Operating Company (Gary) to sell a reconditioned natural gas compressor, which had been manufactured in 1955. The initial offer to appellant was made in a letter dated October 25, 1974. The offer recited the model offered, detailed the overhaul to be performed on the unit and stated:

"All piping and bottles cleaned. All engine and compressor tolerance will be within Ingersoll-Rand new manufacturer specifications and the unit will carry a 90-day unconditional warranty. Parts book and all tolerances will be furnished.

"Price, FOB your location, in as new condition $138,000.00".

This offer was never accepted.

A new offer was made by Gary on April 30, 1975. In pertinent part, it provided:

"We are pleased to quote on an SVG–10 [1] gas compressor, per the attached Bill of Materials. The price shown is FOB Casper, Wyoming. Delivery date is June 30, 1975.

"The unit will be guaranteed to produce 550 HP at 7200 feet above sea level rated at 400 rpm. The unit will also carry a 90-day parts and labor warrantee [sic] with compressor valve and rings excluded.[2]

"Terms for purchase will be 90 per cent of the total cost due within 30 days of

---

1. Ingersoll-Rand SVG–10. The record indicates appellant would have preferred a larger unit, an SVG–12. However, the SVG–10 was accepted and the plan was to "soup up" the SVG–10 with a turbocharger and other modification in order to enhance its performance.

2. Although the parties did not present this case as one involving a question of an exclusive substituted remedy, we perceive that the following code section has great relevance in a case such as this. However, since the case was not presented to the district court nor to us in this context, we note this U.C.C. section only as a matter of interest. The parties have, in fact, contracted for a limited remedy as provided by § 34–21–298 (§ 2–719, U.C.C.) and did not agree that it was exclusive.

"(a) Subject to the provisions of subsections (2) and (3) [subsections (b) and (c)] of this section and of the preceding section [§ 34–21–297] on liquidation and limitation of damages:

"(i) *The agreement may provide for remedies* in addition to or *in substitution for those provided in this article* and may limit or alter the measure of damages recoverable under this article, *as by limiting the buyer's remedies to return of the goods and repayment of the price or to repair and replacement of nonconforming goods or parts; and*

"(ii) Resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

"(b) Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this act [§§ 34–21–101 to 34–21–1002].

"(c) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." (Emphasis added.)

delivery and 10 per cent after 90 days of operation."

The price quoted in this offer was $147,-811.78 and was accepted. It is the warranty in this accepted offer which is at issue in the appeal before the court.

The terms of the offer and acceptance—contract of sale—were not strictly adhered to. The record reveals that delivery of the components did not take place until late September of 1975[3] and that the delivery was effected at appellant's Hiawatha site at a remote location in southwestern Wyoming. At the time of physical delivery of the unit, there was still considerable work to be accomplished before it would be operational. This was a custom installation by seller at the buyer's site. Because of Gary's manpower shortage problems, appellant's crews assisted in mechanical work on the unit, for which appellant received credit.

In late December 1975, but effective November 1, 1975, appellee Gary sold the assets of its Central Engineering Division to the appellee, Central Engineering & Equipment Company (Central) but Gary Operating Company assumed the obligation for the ninety-day warranty on the unit in question.

Work on the unit continued through November 1975 and until February 1976. The record reveals that the total price actually paid for the unit was $184,217.09. A payment of $166,287.61 was made on November 18, 1975. $17,929.48 was retained and on May 7, 1976, appellant made the final payment to Central of $11,443.48, this making the $17,929.48 due, $6,486.00 having been credited to appellant for labor and materials it expended in bringing the unit into operation which was Central's responsibility. According to appellant, this payment was made about thirty days after start of full-time operation of the compressor as an accommodation to Central, rather than after ninety days of operation as provided by the contract terms.

The engine portion of the compressor was tested on February 26, 1976, although the entire compressor unit was not placed in operation. During that test, a number of problems were uncovered which were corrected by Central. Appellant then went about connecting the piping so that the unit could begin its job of compressing gas and the whole unit was set into operation on March 25, 1976. More adjustments were made at that time in order to bring the unit up to the required 550 HP, and nozzle rings of the wrong size were replaced. These final adjustments were completed and the unit began working full time on about April 2, 1976.

On June 3, 1976, the unit suffered a major mechanical breakdown. Central repaired the unit at a cost of $45,911.82. Appellant refused to pay the repair bill, asserting that the unit was still covered by the ninety-day warranty. Central then initiated this action by filing a complaint for the sum owed by appellant to Central for goods sold and delivered. Appellant answered, counterclaimed against Central, and made a third-party complaint against Gary, all premised on the warranty provisions of the contract.

A trial was had before the district court in July 1978. The district court entered judgment on September 5, 1978,[4] pursuant to his memorandum decision letter dated August 4, 1978. The decision letter recited the facts substantially as outlined above. The court concluded that the warranty period began to run on February 26, 1976, because he perceived that the agreement between the parties contemplated that the warranty period was to commence upon

---

3. The delivery date for warranty purposes contemplated by the parties as clearly reflected by the evidence was one related to installation by the seller. The record discloses that the components were actually delivered in September, 1975, but the judge's decision letter and the judgment use the date September, 1976, apparently a typographical error.

4. The delay in this appeal is explained by extraordinary circumstances which came about after the district court trial. Employment of the court reporter was terminated shortly after the trial and this necessitated long delays in preparation of the transcript. Appropriate extensions were timely sought and granted both in the district court and in this court.

"start-up." The breakdown on June 3, 1976, was then some ninety-eight days after start-up and the trial judge concluded the ninety-day warranty had expired. The district court also concluded that the warranty was not one of future performance, that the running of the warranty period was not tolled during the time when the unit was being repaired. The trial judge further found that following start-up, on February 26, 1976, Central honored the warranty and made repairs without charge, and that the failure of the unit to immediately produce the required horsepower was within the contemplation of the parties and was remedied in accordance with the warranty. As a consequence of its decision, the district court did not consider any consequential damages incurred by appellant. The court also determined that the claim of Central was for a liquidated amount and that appellant was obligated to pay prejudgment interest on Central's claim. There were numerous other factual and legal findings detailed in the decision, but we do not recite them because they are not contested in this appeal.

The judgment essentially mirrored the district court's decision letter. The decision letter was detailed and comprehensive both in its factual findings and statement of legal reasoning and has been of great assistance to this court. We encourage such careful consideration during the trial court phase of difficult litigation.

The issues raised by the appellant are summarized as:

(1) The district court erred in finding that the warranty period began to run on February 26, 1976. This error resulted from numerous factual findings that are erroneous:

a. The compressor engine was not started in January 1976.

b. The compressor was not tested in operation on February 26, 1976, and could not have functioned as a compressor at that time even if all gas lines had been connected up.

c. The running of the warranty period should be tolled during the downtime for repairs.

d. The district court failed to take into account a custom of the trade that the warranty period should run from the time the compressor was on line rather than the date it was first tested.

(2) The district court erred in determining there were no implied warranties and that the implied warranties suggested by appellant were precluded by the express warranties.

(3) The district court erred in finding that Central's claim was for a liquidated amount and adding interest after October 26, 1976.

(4) The district court erred in denying appellant's counterclaim for consequential damages resulting from the breakdown.

Gary's brief and argument addressed only issues (1) and (2). Central's brief and argument addressed issue (3).

At the outset, we shall dispose of appellant's contention that the district court erred in finding that the compressor was started up in January 1976, and that as a result of that finding the district court was ever-after about one month off in its determination of relevant factual events. Although this is stated as a finding of fact in the judgment, the record as a whole simply does not bear out this view of the facts, nor does the district court's memorandum decision indicate such an error. We conclude that the reference to January 1976 in the judgment was inadvertent because, in the memorandum decision, the court gave it no special significance.

■ The district court quite properly took the view that the facts were deeply in conflict and that the evidence was uncertain and approximate in many regards—especially concerning dates. Difficult factual questions had to be resolved—troublesome as they may have been. The disposition of this case heavily depends upon resolution of conflicts in the evidence. In such cases we favor the evidence of the prevailing party as we have so often said. We presume specific findings of fact to be correct unless clearly erroneous or against the great

weight of evidence. This court is not able to conclude, after reviewing all the evidence, that we are left with a definite and firm impression that the district court's findings are mistaken. *Shores v. Lindsey,* Wyo. 1979, 591 P.2d 895, 899 (and cases there cited). This is the rule even if we might have reached a different result had we been the triers of fact.

■ The written contract between the parties is extremely brief and in respect to the warranty starting date entirely silent. Generally, the meaning of a contract is to be deduced only from its language if the words used are clear and unambiguous. *Shepard v. Top Hat Land & Cattle Co.,* Wyo. 1977, 560 P.2d 730, 732. However, where the language of the contract is indefinite or ambiguous, all the surrounding circumstances and the governing law must be searched in order to ascertain its true meaning. *Peters Grazing Association v. Legerski,* Wyo. 1975, 544 P.2d 449, 459, rehearing denied, 1976, 546 P.2d 189; *Mauch v. Ballou,* Wyo. 1972, 499 P.2d 591, 593–594; *Chandler-Simpson, Inc. v. Gorrell,* Wyo. 1970, 464 P.2d 849; and see § 34–21–209, W.S.1977. The district court here was required to examine all the facts and circumstances of this case in order to ascertain exactly when the warranty period was to begin to run.

The crucial question which appellant sought to have answered in this case is: When did the ninety-day warranty period begin to run? The written contract provides no clue to the answer. The U.C.C. does not provide a tailor-made answer but it does provide us with considerable guidance in a case such as this where the parties have not expressed their intentions in written form.

For· purposes of starting the statute of limitations, the U.C.C. states that unless a warranty extends to future performance, a breach of warranty occurs when tender of delivery is made, regardless of the aggrieved party's lack of knowledge of the breach. Section 34–21–299.5(b), W.S.1977.[5] In other words, where a product is warranted generally a buyer will have four years from the date of delivery or any other agreed upon period not less than one year, in which to bring an action on the warranty. Section 34–21–299.5(a), W.S.1977. This suggests rather strongly that the date of delivery has special significance to the warranty question, absent specific agreement to the contrary.

■ The code sections pertaining to acceptance also provide some guidance. A buyer has the right to reject delivered goods which are nonconforming. Sections 34–21–264 and 34–21–265, W.S.1977. In this case appellant did not attempt to reject the equipment at issue. Indeed, the evidence supports the conclusion that appellant did accept delivery even though the goods did not fully conform to the contract. See § 34–21–269, W.S.1977.[6] The district court's memorandum decision implicitly makes such a finding, and we will not disturb it in view of the supporting evidence.

■ In this case the district court found, as a part of his factual findings, that the appellee delivered the compressor on February 26, 1976, and that the appellant accepted it on that same date. These findings express his resolution of difficult factual disputes as to when the parties intended to start the running of the warranty period. The record supports these findings and we will not disturb them, particularly in view of the fact that neither "delivery" nor "acceptance" were placed in issue by the appellant. Appellant's case is based on a theory which presumes the ninety-day warranty

5. The renumbering of the Uniform Commercial Code in the 1977 revision and republication of the Wyoming Statutes is confusing and aggravating. The number of this section should be 34–2–725. In that way ready reference to § 2–725 of the Uniform Commercial Code and the many authorities on the subject would be possible. We strongly recommend that Chapter 21, Title 34, W.S.1977, be revised accordingly at the earliest time. We are aware that a cross reference has been furnished in the Supplement but hopefully consider it only a temporary crutch.

6. In such a case, the buyer's remedy is spelled out by § 34–21–293, W.S.1977.

period began to run in late March or early April, 1976 and that the district court erred in its finding of fact that it began to run on February 26, 1976. It claims this error was founded on the trial court's misunderstanding and misinterpretation of the underlying facts. That is all there is at question and the only question we decide in this regard is that we cannot disturb the district court's resolution of the question presented to it because it is clearly supported by the record.

As a second level argument in support of the later date, appellant relies on the entire factual picture as well as an argument founded on a theory of usage of the trade. Section 34–21–124(b) through (e), W.S.1977, (§ 1–205(2) through (5), U.C.C.) sets out the meaning and applicability of usage of trade.

"(b) A usage of trade is any practice or method of dealing having such regularity of observance in a place, vocation or trade as to justify an expectation that it will be observed with respect to the transaction in question. The existence and scope of such a usage are to be proved as facts. If it is established that such a usage is embodied in a written trade code or similar writing the interpretation of the writing is for the court.

"(c) A course of dealing between parties and any usage of trade in the vocation or trade in which they are engaged or of which they are or should be aware give particular meaning to and supplement or qualify terms of an agreement.

"(d) The express terms of an agreement and an applicable course of dealing or usage of trade shall be construed wherever reasonable as consistent with each other; but when such construction is unreasonable express terms control both course of dealing and usage of trade and course of dealing controls usage of trade.

"(e) An applicable usage of trade in the place where any part of performance is to occur shall be used in interpreting the agreement as to that part of performance."

The district court seems to have misconstrued this argument of appellant somewhat. It is discussed briefly in the decision letter in the context of § 34–21–233(c)(iii), W.S.1977 (§ 2–316(3)(c), U.C.C.).[7] That section specifically applies to implied warranties. In this case, the appellant was asserting that an express warranty had to be viewed in the light of a usage of trade. The usage of trade which appellant asserted was that the warranty should run from the time the compressor was on line rather than from the initial start-up. Two of appellant's witnesses testified that this was a usage of the natural gas compressing trade. While the district court's analysis of this issue may be incorrect, the result he reached is the proper one.

The usage of trade argument must fail for a number of reasons. In the first instance, the appellant had the burden of proving its existence. *George v. School District No. 8R of Umatilla County*, 1971, 7 Or.App. 183, 490 P.2d 1009. The evidence presented by appellant on this point is the conclusions of two witnesses that the usage of trade is that such a warranty only begins to run when the compressor is on line. The appellant did not prove enough facts to carry his burden because it had to demonstrate that the appellee was, or should have been, aware of the usage. Section 34–21–124(c) (§ 1–205(3), U.C.C.), supra. The record is entirely silent in this regard. Moreover, the district court could have readily concluded that appellant failed to demonstrate the necessary "regularity of observance" within the trade in question. Thus we hold that the result reached by the district court was correct both factually and legally even though it misconstrued the argument of appellant in that regard. In any event, the district court apparently disregarded the usage-of-trade theory.

The trial judge found as a matter of fact that the compressor was started up and tested on February 26, 1976. As a factual

7. Section 34–21–233(c)(iii), W.S.1977:

"(iii) An implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade;"

conclusion, this is indisputable. The parties did not disagree that this event took place. The district court concluded as a result of this fact that the compressor was delivered and accepted by the appellant under the terms of the contract. This we hold to be a correct application of facts to the law and inconsistent with any usage-of-trade argument. Section 34–21–299.5 (§ 2–725, U.C.C.), supra; *Goosic Construction Co. v. City National Bank of Crete*, 1976, 196 Neb. 86, 241 N.W.2d 521, 522.

However that may be, we do hold that the court could have applied other provisions of § 34–21–124, namely those pertaining to the "course of dealing between [these] parties" to "give particular meaning to and supplement or qualify terms of an agreement." We conclude that the manner of dealing between these parties precludes application of any other warranty than that agreed upon.

A case very closely related, though dealing with a one-year statute of limitations rather than a ninety-day warranty period, reaches a similar conclusion, *Standard Alliance Industries, Inc. v. Black Clawson Co.*, 1978, 6th Cir., 587 F.2d 813, 819–820. In the *Standard Alliance* case the plaintiff argued for a delivery date that was extended because the machine did not immediately function properly and because the machine was one that, by its nature, required a lengthy shakedown period. That is basically appellant's argument here. Nonetheless, the court concluded:

" * * * Under section 2–725, a cause of action accrues upon initial installation of the product regardless whether it functions properly or not so long as the warranty does not extend to future performance. See *Val Decker Packing Co. v. Corn Products Sales Co.*, 411 F.2d 850 (6th Cir. 1969).

"Secondly, Standard Alliance argues that the page twelve warranties did extend to future performance under section 2–725(2), and that the statute of limitations thus ran from the date of discovery of the defect. It particularly points to the phrase, 'Black Clawson warrants that the subject machinery *will* perform the following mechanical functions.' Plaintiff's argument proves too much. Since all contracts contain future promises, words of futurity such as 'will' are common. When the contract at issue here was signed, the machine was not yet built; the word 'will' was necessarily used. The proper question is whether the statute of limitations is meant to run from the day of delivery or from the day when a defect is found sometime in the future.

"Most courts have been very harsh in determining whether a warranty explicitly extends to future performance. Emphasizing the word 'explicitly,' they have ruled that there must be specific reference to a future time in the warranty. As a result of this harsh construction, most express warranties cannot meet the test and no implied warranties can since, by their very nature, they never 'explicitly extend to future performance.' [citing cases.]" (Emphasis appears in original; footnote omitted.)

Obviously, we must also conclude that the compressor in this case was delivered on February 26, 1976, in a state which did not conform to the warranty. However, the record supports the conclusion that it was accepted nonetheless and that Central immediately undertook to effect the necessary repairs to cause the compressor to conform to the warranty, i. e., remedied oil leaks, made adjustments as to bring up the horsepower as warranted and made other repairs. At the same time appellant immediately undertook connecting it to its system. While we might disagree with the district court's conclusion that the compressor was "delivered" and "accepted" within contemplation of the agreement of the parties, this is a factual determination and thus one we are not at liberty to disturb absent a basis for concluding that the determination was clearly erroneous or contrary to the great weight of evidence, or inconsistent with the evidence. *Madrid v. Norton*, Wyo. 1979, 596 P.2d 1108; *Kvenild v. Taylor*, Wyo. 1979, 594 P.2d 972. Here, there is considerable evidence to support the conclusion of a

"course of dealing between [these] parties," which restricted the warranty to labor and materials with a starting date of February 26, 1976 and there were no implied agreements.

The unfortunate circumstances that eventuated here are not dissimilar to those which occur in many cases where written contracts are incomplete or unclear, or where the terms of clearly drawn contracts are essentially ignored. In such instances, the courts are called upon to piece together facts and circumstances that explain the contractual relations that did exist. Of course, this is not a process that can be done with great exactness, especially where the parties take two exceedingly different views of what the facts and circumstances were. In any case, the consequences of such impreciseness in contractual dealings must be borne by those who engage in such dealings. See *Quin Blair Enterprises, Inc. v. Julien Construction Co.*, Wyo. 1979, 597 P.2d 945, 951 (fn. 6).

■ The appellant asserts the running of the warranty period should be tolled while the compressor was down for repairs. The warranty was for parts and labor during the ninety-day period. We hold that this warranty does not provide for extensions of the ninety-day period if repairs are required during that period. We cannot read this into the warranty. The warranty does not warrant performance without malfunction during the term of the warranty, but only that Central will repair and replace defective parts as may be required. *Tomes v. Chrysler Corp.*, 1978, 60 Ill.App.3d 707, 18 Ill.Dec. 71, 377 N.E.2d 224, 227; *Binkley Co. v. Teledyne Mid-America Corp.*, 8th Cir. 1972, 460 F.2d 276. See *Voth v. Chrysler Motor Corporation*, 1976, 218 Kan. 644, 545

P.2d 371, 375; see generally 68 A.L.R.3d 1277, esp. §§ 4 and 10 (1976).[8] It did that.

Appellant's contention on tolling during repairs is not supported by directly relevant authority. However, he makes a most cogent argument and supports it with analogous authority. We commend this fine briefing. However, we are unpersuaded by the argument. This issue really ties into and is intimately related to the concept that the warranty is one of future performance. It is on this point that we must part company with the appellant. When the argument as to future performance fails, this contributes significantly to the failure of the argument that the warranty period should be tolled.

■ What appellant really is saying is that the warranty says the machine is warranted for ninety days and the appellant could not ascertain if the machine was going to perform properly until it was on line and doing its job of compressing gas. The warranty of future performance is founded upon the language found in § 34–21–299.-5(b), supra. We have held that such a warranty must be explicit. *Connor v. Bogrett*, Wyo.1979, 596 P.2d 683; see generally 93 A.L.R.3d 690 (1979). There is no such explicit warranty in this case. See *Voth v. Chrysler Motor Corporation*, supra (and cases cited therein); Schmitt, et al., "For Whom the Bell Tolls—etc.", 28 Ark.L.R. 311, 312–323 (1974).[9] In order that a warranty be tolled during downtime for repairs, such a provision would have to be stated in the warranty or otherwise implied from facts of the dealings between the parties not apparent in the evidence.

We turn now to the issue of implied warranties. The development of this issue was unsatisfactory both in the district court and in this appeal. The district court's

---

**8.** We agree with the trial judge that *Kure v. Chevrolet Motor Division*, Wyo.1978, 581 P.2d 603, is not applicable for the reason that the vehicle in that case was a "lemon" and never did work right.

**9.** *Standard Alliance Industries, Inc. v. Black Clawson Co.*, supra, 587 F.2d at 821, reaches

the opposite conclusion. Nonetheless, the result reached in that case is the same as that we reach here. However, based on the weight of authority we find this to be an incorrect view of the meaning of the warranty of future performance. See authority summarized in 28 Ark.L.R. 311, and 93 A.L.R.3d 690.

opinion letter and order deal with this question only superficially. We agree that the relevant sections are 34–21–231 (§ 2–314, U.C.C.), 34–21–232 (§ 2–315, U.C.C.), 34–21–233 (§ 2–316, U.C.C.), and 34–21–234 (§ 2–317, U.C.C.). However, under the circumstances of this case, it is clear that the governing section is § 34–21–234, W.S.1977 (2–317, U.C.C.):

"(a) Warranties whether express or implied shall be construed as consistent with each other and as cumulative, but if such construction is *unreasonable* the intention of the parties shall determine which warranty is dominant. In ascertaining that intention the following rules apply:

\* \* \* \* \* \*

"(iii) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." (Emphasis added.)

The parties could have agreed that the ninety-day warranty of replacement of parts and labor was exclusive under § 34–21–233 (§ 2–316, U.C.C.); but they did not, so we must discuss implied warranties and preclude their application.

■ In this case, the district court had to resolve a number of knotty factual questions. We hold that the district court made factual findings which are wholly consistent with the evidence. First, it seems clear a construction of the express and implied warranties that would extend Central's obligation to repair and replace beyond the ninety-day warranty period would be unreasonable. Second, in making that determination, the district court properly found, as a matter of fact, that it was the intention of the parties that there was no warranty on this compressor beyond the ninety-day limitation, and thus that the ninety-day warranty was dominant over any implied warranty of merchantability or general fitness of purpose (as contrasted to the warranty of fitness for a *particular* purpose). Third, in reaching that conclusion, the dis-

trict court properly applied the rule of construction that express warranties displace inconsistent implied warranties. Clearly, to imply a repair and replace warranty that extends beyond ninety days is inconsistent with Central's express warranty. Finally, appellant's assertion that he may be protected by the language "\* \* \* other than an implied warranty of fitness for a particular purpose," is without merit. Section 34–21–232 (§ 2–315, U.C.C.), supra, is very clear:

"Where the seller at the time of contracting has reason to know any particular purpose for which goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose."

■ Although appellant's evidence was not plainly structured so that this issue was clearly developed in the district court, there is, in any case, a failure of proof by appellant in that there is no evidence to suggest that appellant was relying on Central's skill or judgment. *S-Creek Ranch, Inc. v. Monier & Co.*, Wyo. 1973, 509 P.2d 777. Indeed, the evidence is quite to the contrary in that appellant furnished the specifications and worked side by side with Central during installation and itself made the hookup to its own system. Thus, it must be concluded that the breakdown of the compressor after ninety-eight days of operation did not breach any implied warranty of fitness for a particular purpose.

■ Appellant asserts the claim of Central was not for a liquidated amount and hence prejudgment interest should not have been added to the judgment. Interest prior to judgment may be recovered on liquidated claims. Liquidated claims are those which are certain, by reference to well-established market values plus computation. *Chandler-Simpson, Inc. v. Gorrell*, supra, 464 P.2d at 853. Here, there was

never any dispute as to the validity of the charges sought by Central. The only issue was whether appellant was relieved of the debt owed Central, because of a breach of warranty. There was no breach of warranty as we have decided above. Thus, we must conclude that the district court was correct in assessing prejudgment interest.

In view of our decision above, the warranty to replace parts and labor within ninety days was agreed upon; and the warranty having expired, it is unnecessary for us to discuss appellant's final issue as to its counterclaim for lost production.

Affirmed.