Billy G. BLUE, Appellant,

v.

H–K CORPORATION d/b/a Oklahoma Peterbilt Trucks, Appellee.

No. 52991.

Court of Appeals of Oklahoma, Division No. 1.

March 3, 1981.

Rehearing Denied March 31, 1981.

Certiorari Denied May 26, 1981.

Released for Publication by Order of Court of Appeals May 28, 1981.

Jimmy N. Coffman, Oklahoma City, for appellant.

McKinney, Stringer & Webster by David A. Cheek, Oklahoma City, for appellee.

PER CURIAM:

An appeal by the plaintiff, Billy G. Blue, from an order of the trial court sustaining the demurrer of the defendant, Oklahoma Peterbilt Trucks (OPT), and entering judgment for OPT in an action to establish the priority of each party's security interest in a truck.

This case involves the priority of conflicting security interests in the same collateral. The pertinent facts are that OPT sold a 1975 Peterbilt tractor truck to the debtor and financed the sale under a document entitled: SECURITY AGREEMENT—RETAIL INSTALLMENT CONTRACT. This document set forth the terms of payment and granted OPT a security interest in the truck. OPT filed a financing statement covering the transaction.

On November 15, 1976, the debtor executed a promissory note to Blue. To secure his indebtedness on the note, the debtor granted a security interest in the same truck to Blue. Blue filed a financing statement on December 6, 1976.

On January 7, 1977, the debtor refinanced the truck with OPT under a document identical in form to the 1975 agreement to the debtor and OPT. This agreement clearly stated its purpose was to amend and refinance the 1975 agreement. The debtor was granted an extension of six months to satisfy his indebtedness to OPT, and his wife was not required to sign the agreement as an accommodation party as she had on the 1975 agreement. OPT did not file a financing statement upon this transaction.

Subsequently, the debtor declared bankruptcy. The trustee in bankruptcy disclaimed the truck as a burdensome asset, and OPT took possession of it. Thereafter, OPT gave notice of its intent to sell the truck at a private sale. Upon receiving notice of the sale, Blue brought this action to have the relative priorities of the security interests established. The trial court found that OPT had first priority in the truck and rendered judgment accordingly. Blue appeals.

The priority of the conflicting security interests is governed by Article 9 of the Uniform Commercial Code (hereinafter cited by U.C.C. section number only). The truck is a good classified as "equipment" under the U.C.C. § 9–109(2). A security interest in equipment other than equipment used in farming operations is perfected by filing a financing statement in the office of the County Clerk of Oklahoma County. § 9–401(1)(c). Both parties properly perfected.

OPT's security interest is a "purchase money security interest." § 9–107(a). A properly perfected purchase money security interest in collateral other than inventory has priority over a conflicting security interest. § 9–312(4). If a purchase money security interest is not properly perfected, section 9–312(5) becomes applicable. If that section comes into play and both security interests are perfected by filing, priority is granted in the chronological order of filing. § 9–312(5)(a).

When Blue perfected his security interest in the truck in December of 1976, it was junior to that of OPT. On appeal Blue contends that the refinancing acts to move his security interest to first priority.

Blue asserts that the refinancing constitutes a "future advance." He argues that since the original security agreement between the debtor and OPT did not charge the collateral with future advances, the future advance was a new loan requiring a separate security agreement and a separate perfection to take priority over his existing perfected security interest. He relies on *Texas Kenworth Co. v. First Nat'l Bank*, Okl., 564 P.2d 222, in support of his position. In that case, the secured party (Kenworth) held perfected security interests in four trucks. The debt owed on the trucks was paid in full. Later the secured party granted new loans to the debtor relying on the original security agreements. The Court held, at pp. 226–27, as follows:

> Therefore, we hold that the language in the Security Agreements before us did not have the effect of securing future advances. Because the 1969 Security Agreements did not secure future advances, and because all debts due and payable to Kenworth except for future advances had been satisfied when the Bank took possession of the proceeds, the 1969 Security Agreements were no longer in effect when the trucks were repossessed by the Bank. When the Bank repossessed the trucks, its 1971 Security Agreement entitled it to priority over the collateral and its proceeds.

■ Blue's argument is correct *only* if a refinancing of an existing debt is deemed a future advance. The original security agreement between OPT and the debtor has no language indicating that the collateral is intended to secure future as well as present obligations. A creditor may obligate the collateral to cover future advances or other value in the initial security agreement. § 9–204(5). However, the security agreement must by its language indicate that the collateral is intended to cover future advances. *Security Nat'l Bank v. Dentsply Professional Plan*, Okl., 617 P.2d 1340, 1345–46; *Texas Kenworth Co. v. First Nat'l Bank*, 564 P.2d 222, 225. If the refinancing

constitutes a future advance, OPT can no longer rely on its 1975 security interest to establish priority with regard to Blue's 1976 perfected security interest. Instead, OPT must rely on the security interest taken at the time of refinancing in 1977. OPT's 1977 security interest standing alone is an unperfected purchase money security interest, because no financing statement was filed. Since the security interests are perfected by filing, priority among the conflicting interests would be dependent on the chronological order of filing. Therefore, Blue, being first in time to file, would have first priority in the collateral. § 9–312(5)(a).

A future advance is an advance of new value. The situation before us is not one where the creditor gives new value relying on a prior security interest to secure the new advance granted. Rather, here the original debt was merely refinanced, and the debtor received an extension of time to satisfy that debt. A renewal, extension, or refinancing of an existing debt is not a future advance. Therefore, the original security interest taken in the collateral remains in force even in the absence of a future advance clause. *Mid-Eastern Electronics, Inc. v. First Nat'l Bank*, 455 F.2d 141, 145 (4th Cir. 1970); *Cantrill Construction Co. v. Carter*, 418 F.2d 705, 708 (6th Cir. 1969); *Hackworth v. First Nat'l Bank*, 265 Ark. 668, 580 S.W.2d 465, 469 (1979); *State Bank of Young America v. Vidmar Iron Works, Inc.*, Minn., 292 N.W.2d 244, 249 (1980). *See also* 4 R. Anderson, Uniform Commercial Code § 9–302:8, at 261 (1971).

Under the above authority, OPT's perfected purchase money security interest remained in force and has priority over Blue's conflicting security interest in the same collateral. The judgment of the trial court is affirmed.

AFFIRMED.

All Judges concur.