FIRST NATIONAL BANK AND TRUST COMPANY OF NORMAN, OKLAHOMA, a National Banking Institution, Appellant,

v.

SECURITY NATIONAL BANK AND TRUST COMPANY OF NORMAN, OKLAHOMA; The Weather Station, Inc., an Oklahoma Corporation, Thomas Baxter and Linda Hooper, Appellee.

SECURITY NATIONAL BANK AND TRUST COMPANY OF NORMAN, OKLAHOMA, Appellant,

v.

FIRST NATIONAL BANK AND TRUST COMPANY OF NORMAN, Appellee.

Nos. 60151, 60645.

Supreme Court of Oklahoma.

Feb. 14, 1984.

As Corrected Feb. 28, 1984.

James E. Pence, Pence & Housley, Norman, for appellant, First Nat. Bank and Trust, Norman, Okl.

Rebecca J. Patten, English, Patten, Deatherage & Rife, Norman, for appellee, Security Nat. Bank and Trust Co.

LAVENDER, Justice:

At issue is the priority, inter se, of two creditors claiming a security interest in the same collateral under Part 3, Art. 9 of the Oklahoma Commercial Code—Rights of Third Parties; Perfected and Unperfected Security Interests; Rules of Priority (12A O.S.1981 § 9–309, et seq.).

The essential facts for determination of the issues on appeal are as follows:

On November 22, 1980, The Weather Station, Inc. (Weather Station) borrowed $30,-000 from Security National Bank and Trust Company of Norman (Security) and gave Security a note and a security interest in all furniture, fixtures, equipment, inventory, accounts receivable and proceeds then owned by Weather Station or thereafter acquired. The security interest agreement further provided:

> "This security interest is given to secure: (1) payment (of the note with interest when due); (2) future advances to be evidenced by like notes to be made by Bank to Debtor at Bank's option; (3) all expenditures by Bank for taxes, insurance, repairs to and maintenance of the Collateral and all costs and expenses incurred by Bank in the collection and enforcement of the note and other indebtedness of Debtor; and (4) all liabilities of Debtor to Bank now existing or herafter incurred, matured or unmatured, direct or contingent, and any renewals and extensions thereof and substitutions thereof."

Uniform Commercial Code notice was duly and timely filed.

On August 25, 1980, the indebtedness was fully paid, but no termination statement was filed by Security, and none was demanded by Weather Station.

On April 10, 1981, Weather Station borrowed $41,056.56 from Security and gave Security interest in four vehicles. Lien entry forms were timely and duly filed with the Oklahoma Tax Commission.

While the $41,056.56 indebtedness was outstanding and unpaid, Weather Station successively borrowed from First National Bank and Trust Company of Norman, Oklahoma (First) as follows:

January 25, 1982, $40,000 to purchase equipment;

March 1, 1982, $20,000 and

March 21, 1982, $30,000, giving First a security interest on the latter two loans in the property covered by Security's initial security interest agreement. All of the First loans were duly and promptly recorded in accordance with Oklahoma's Uniform Security Code (UCC). No part of the indebtedness to First has been paid.

On June 1, 1982, Security loaned Weather Station $30,000 and received a security interest in all furniture, fixtures, equipment and accounts receivable of Weather Station. Notice was duly and timely filed under UCC. On June 15, 1982, Weather Station repaid $20,000 and executed a new promissory note on the same date in the sum of $10,000. The note for $10,000 has not been paid.

On February 10, 1983, the court below, after trial, determined that Security's position as a creditor is prior to that of First, and rendered judgment accordingly.

First appeals.

Priority between conflicting security interests in the same collateral is governed by Art. 9 of the Oklahoma Uniform Commercial Code (12A O.S.1981 § 9–101, et seq.). Section 9–312(5), in pertinent part, provides:

> "(5) ... priority between conflicting security interests in the same collateral shall be determined as follows:
>
> "(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under Section 9–204(1) and whether it attached before or after filing;

\* \* \* ."

Since the security interest of both Security and First were perfected by filing, our inquiry on appeal is directed to whether the "future advances" provisions of Security's financing statement of November 22, 1980, insures Security a first priority position as against First's subsequently filed security interest in the same collateral.

■ A security agreement under UCC is a contract. Sec. 9–201 provides:

"Except as otherwise provided by this Act a security agreement is effective according to its terms between the parties, against purchasers of the collateral and against creditors ...."

Sec. 9–204(3) provides: "Obligations covered by a security agreement may include future advances or other value whether or not the advances or value are given pursuant to commitment."

In *Blue v. H–K Corp.*, Okl.App., 629 P.2d 790 (1981), the Oklahoma Court of Appeals held (791):

"A creditor may obligate the collateral to cover future advances or other value in the initial security agreement. § 9–204(5). However, the security agreement must by its language indicate that the collateral is intended to cover future advances. *Security Nat'l Bank v. Dentsply Professional Plan*, Okl., 617 P.2d 1340, 1345–46; *Texas Kenworth Co. v. First Nat'l Bank*, [Okl.,] 564 P.2d 222, 225."

In the case at bar, Security's security agreement of November 22, 1980, clearly and unequivocably purports to bind the collateral with "all liabilities of Debtor to Bank now existing or hereafter incurred, matured or unmatured, direct or contingent, and any renewals and extensions thereof and substitutions thereof." A clearer manifestation of an intent to bind all future indebtedness which may be owing by Weather Station to Security is difficult to imagine.

First urges, however, that payment by Weather Station of the November 22, 1980, indebtedness in effect terminated the security interest of Security despite the fact that no termination statement was filed or requested by Weather Station, and despite the fact that the April 10, 1981, indebtedness of Weather Station, secured by four vehicles was outstanding and unpaid at the time First perfected its security agreement of January 25, 1982, thus (First argues) placing First's perfected security interests in a position prior to that of Security. We disagree.

Section 9–404 (in effect on November 22, 1980) provides, in part:

"(1) *Whenever there is no outstanding secured obligation* and *no commitment* to make advances, incur obligations or otherwise give value, the secured party must *on written demand by the debtor* send the debtor a statement that he no longer claims a security interest under the financing statement, which shall be identified by file number ...." (Emphasis added.)

In *Texas Kenworth v. First Nat. Bank of Bethany*, Okl., 564 P.2d 222 (1977) we held (227):

"Unless a written demand by the debtor sent to the creditor, pursuant to 12A O.S.1971 § 9–401, makes a demand, there is no duty on behalf of the creditor to file a release or termination statement. Conversely, there is no duty on the part of the debtor to make a written demand. Since there is no duty to file a release or termination statement, unless requested, and since there is no duty to make such a request, we attach no significance to the fact that no release or termination statement was filed."

In *State Bank of Young America v. Vidmar Iron*, Minn., 292 N.W.2d 244 (1980), *Texas Kenworth* was cited with approval and followed (249), the Minnesota Supreme Court further holding that where, as here, the creditor continued to incur additional debts after the original debt was paid, the "future advances" clause of the security agreement thereafter remained valid and covered a renewal note and additional loans made by debtor in favor of creditor.

■ The doctrine of relation back has been incorporated in the UCC, thus giving future advances made while a security interest is perfected the same priority enjoyed with respect to the first advance. 12A 1981 § 9–312(7); *Allis-Chalmers Cr. Corp. v. Cheney Inv.*, 227 Kan. 4, 605 P.2d 525 (1980); *Kimbell Foods, Inc. v. Republic Nat. Bank* (CA 5th, 1977) 557 F.2d 491 (498), aff'd 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).

The question thus becomes one of determining whether Security's original perfected financing statement was in fact terminated or extinguished prior to First's perfecting its financing statement, since the failure to issue, or the creditor's failure to request and record a termination statement is not determinative.

■ Since UCC offers no specific guidance as to when a "future advances" clause in a financing statement terminates where the financing statement is silent as to its duration, we conclude that its prospective duration must be determined by the intention of the parties as in other cases involving the law of mortgages generally.

In *Safe Deposit & Trust Co. v. Berman* (CA 1, 1968), 393 F.2d 401, it was suggested that failure on the part of a debtor to demand a termination statement may be evidence of an intention that the security interest was to continue beyond the original obligation and to cover future advances secured by the same collateral. In the absence of a statute justifying an inference that a mortgage is dead once there is no debt momentarily existing, no such inference necessarily follows under the common law. 3 A.L.R. 4th § 24(b), p. 745, 746.

■ Here, the creditor (Security) did not deliver a termination statement to the debtor (Weather Station), nor did the debtor demand one. Approximately seven months following the payment of the original indebtedness, further secured financing of four vehicles was entered between Weather Station and Security, and while the original financing statement remained perfected and unreleased of record, First, with record notice of the existing financing statement containing its "dragnet" clause, perfected its subsequent financing covering the same collateral as was covered in Security's financing statement. We hold that Security's position was prior to that of First in the collateral both as to Security's original financing statement, and as to Security's subsequent financing statement on the same collateral.

Security next urges that whether future liabilities fall within a security agreement's future-advances clause is determined by whether the debts are of the same class as the primary obligation and in contemplation of the parties at the time the agreement was executed, relying upon *Security Nat. Bank v. Dentsply Professional, supra,* (1345–1346) so stating.

We are not here concerned with whether the debts are of the same class as the primary obligation for the reason that the parties to this cause so stipulated, and the uncontroverted evidence adduced at trial disclosed that both debts were working capital and for the same purpose.

■ We therefore turn to the question of whether the future advances were within the contemplation of the parties at the time the original financing statement agreement was executed.

In *Kimbell Foods, Inc., v. Republic Nat. Bank, supra,* the Court of Appeals applied Texas law in addressing this precise issue. There the Court said (496):

"The language of the contract, unless ambiguous, represents the intention of the parties. The intent deduced from this objective matter, is controlling. (Citations omitted.) Testimony as to ... subjective intent in receiving the future advance clause was a classic violation of the parol evidence rule and clearly inadmissible.

"The district court compounded this error by failing to consider the truest test of the parties' intention, the words of the contract clearly providing that the security agreement should cover future indebtedness."

That Oklahoma law comports with that of Texas on this issue is clear. 15 O.S.1981 §§ 137, 154 and 155; *Yeager v. Jackson*, 162 Okl. 207, 19 P.2d 970 (1933); *Davon Drilling Co. v. Ginder*, Okl., 467 P.2d 470 (1970); *In Re Public Leasing Corp.* (10th Cir.1973), 488 F.2d 1369.

The language of the future-advances clause being clear, unambiguous and unequivocal, that it was within the contemplation of the parties that future advances be covered by the original financing statement, no further inquiry may be made.

Security brought a separate appeal to this Court in Case No. 60,645, which case was consolidated by this Court with Case No. 60,151, under surviving No. 60,151. By this appeal, Security challenges the order of the trial court sustaining First's motion for reimbursement of moving and storage costs incurred by First in seizing the secured collateral and storing the same under the terms of its security agreement with Weather Station. Security further appeals from the order of the trial court overruling its motion to assess attorney fees against First.

■ Upon default, under the terms of its security agreement with Weather Station, First seized the secured collateral and stored the same on its premises. Thereafter, First filed suit against Weather Station and guarantors of the debt for an order of sale of the collateral. Security intervened, and ultimately prevailed in establishing its priority over the position of First. By assessing costs to be paid out of the proceeds of the sale of the collateral, the trial court in effect ordered the moving and storage "costs" incurred by First be paid out of sale proceeds to the detriment of Security's interest position in the sale proceeds. No legal basis for the assessment as costs of First's expenditures in seizing and storing the collateral prior to sale and without prior right to the collateral has been pointed out either in the trial court's order or by First. Neither has our research disclosed any statutory authority for such cost assessment as a priority claim against collateral sale proceeds. We therefore hold that it was error for the trial court to assess as costs as a priority claim against Security's claim to the sale proceeds of the secured collateral, and to the extent that such costs are determined to be prior to the claim of Security to the sale proceeds, the order is reversed.

■ Security, having intervened in First's suit seeking a court order for possession of the collateral and its sale, and having established its prior right to that of First to the possession of the secured collateral and prior right to the proceeds from the sale of the collateral, Security was the prevailing party within the meaning of 12 O.S.1981 § 1580, and, as such, was entitled to recover a reasonable attorney fee from First to be set by the trial court to be taxed and collected as costs. The order of the trial court denying Security's motion for attorney fees is reversed.

The parties having stipulated that the reasonable value of Security's attorney fees is the sum of $1,750, said sum is hereby taxed as costs against First and in favor of Security.

BARNES, C.J., and HARGRAVE, OPALA and WILSON, JJ., concur.

SIMMS, V.C.J., and HODGES, J., dissent.