**INTERMOUNTAIN BRICK COMPANY,**
a Colorado corporation, Appellant
(Defendant),

v.

**VALLEY BANK, an Idaho banking corporation, Appellee (Plaintiff).**

No. 87–40.

Supreme Court of Wyoming.

Nov. 25, 1987.

William L. Anderson of Daly, Maycock, Anderson and Taylor, Gillette, for appellant.

Kenneth R. Marken and James T. Anest of Marken & Anest, Casper, for appellee.

Before BROWN, C.J., THOMAS, URBIGKIT, and MACY, JJ., and JOFFE, District Judge, Retired.

JOFFE, District Judge, Retired.

After appellant Intermountain Brick Company received judgment, execution, and garnishment of accounts receivable of a masonry contractor through a separate lawsuit, appellee Valley Bank brought suit against Intermountain for conversion, claiming that Valley Bank had a valid and

prior perfected security interest in those assets. Both parties filed for summary judgment, and the district court granted summary judgment in favor of Valley Bank.

We reverse.

In 1984 and 1985, Westates Construction Company was the general contractor for the construction of Centennial Junior High School in Casper. Westates subcontracted some of the masonry work with Etsel E. Sommer d/b/a Etsel E. Sommer Masonry Company. Sommer contracted with Intermountain for the purchase of bricks.

On May 10, 1985, Sommer made and delivered to Valley Bank, whose principal place of business is in Idaho Falls, a security agreement covering, among other things, "revolving accounts receivable" to cover a line of credit which Sommer had obtained from Valley Bank. Valley Bank perfected its security interest in Wyoming by recording it with the Natrona County Clerk on December 24, 1985 and with the Office of the Wyoming Secretary of State on January 3, 1986.

Subsequently, Sommer failed to pay for all of the bricks, and Intermountain filed suit against Sommer in Wyoming. On January 16, 1986, Intermountain took judgment against Sommer for the sum of $9,879.98 plus costs. Thereafter, Intermountain issued execution and garnishment against Westates which paid over to the Clerk of Court the sum of $9,895. This amount was turned over to Intermountain on April 23, 1986.

On April 22, 1986, Valley Bank and Sommer executed a "final waiver of lien" by which they "waived and released all lien or right to lien existing for work or labor performed, or materials furnished * * * in the construction project," and delivered the document to Westates. After receiving the final waiver of lien, Westates released to Valley Bank the remaining funds, the balance of which was approximately $70,000. The final waiver of lien also contained, at the top of the page, the following:

"This [lien] release includes all backcharges, ( [$]18,701.23), *[p]ayments made to Intermountain Brick through the Clerk of Court, Natrona County ([$]9,895.00)* and Wyoming Block ( [$]854.73)[.] Also your final retainage of $70,155.04[.]" (Emphasis added.)

On May 9, 1986, Valley Bank filed the present lawsuit against Intermountain for conversion of the $9,895. The trial court granted summary judgment to Valley Bank on the basis that the final waiver of lien could not qualify as a release of a security interest. The court specified in its decision letter:

"The main issue is whether plaintiff waived its right to the collateral by signing the lien waiver. There is nothing in that document which indicates that the plaintiff waived its right under the security agreement. That document appears to have no legal effect as far as this controversy is concerned."

Therefore, the court concluded that, because there was no genuine issue of Valley Bank's intent, judgment was proper as a matter of law. This appeal followed.

According to Rule 56(c), W.R.C.P., a summary judgment

"shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.*" (Emphasis added.)

*Bryant v. Hornbuckle*, Wyo., 728 P.2d 1132, 1135 (1986), establishes the burden placed upon a party seeking a summary judgment and this court's applicable standard of review.

"A party seeking summary judgment has the burden of demonstrating that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *O'Donnell v. City of Casper*, Wyo., 696 P.2d 1278, 1281 (1985). The purpose of summary judgment is to eliminate formal trials where only questions of law are involved and to pierce the formal allegations and reach the merits of a controversy where no material issue of fact is present. *England v. Sim-*

*mons,* Wyo., 728 P.2d 1137 (1986). The standards we use in reviewing a trial court's grant or denial of summary judgment are stated in *England v. Simmons,* supra:

> " ' "When reviewing a summary judgment on appeal, we review the judgment in the same light as the district court, using the same information. * * * Upon examination of a summary judgment, we view the record from the vantage point most favorable to the party opposing the motion, giving him all favorable inferences which may be drawn from the facts." ' (Citations omitted.) At 1141, quoting *Garner v. Hickman,* Wyo., 709 P.2d 407, 410 (1985)."

On appeal appellant Intermountain and appellee Valley Bank essentially agree that no genuine question of fact exists in this case. However, Intermountain contends that the lien waiver reflects Valley Bank's intent to release its security interest. In response, Valley Bank argues that no inference of release is possible as a matter of law because the requirements of § 9-406 of the Uniform Commercial Code (§ 34-21-955, W.S.1977), are not satisfied. Therefore, we first must determine whether the lien release in this case met all the statutory requirements. If a security release must be filed pursuant to those sections to be effective, no significance lies in any possible intent of Valley Bank to release its security.

Section 34-21-955 (§ 9-406) provides:

"A secured party of record may by his signed statement release all or a part of any collateral described in a filed financing statement. The statement of release is sufficient if it contains a description of the collateral being released, the name and address of the debtor, the name and address of the secured party, and the file number of the financing statement. A statement of release signed by a person other than the secured party of record must be accompanied by a separate written statement of assignment signed by the secured party of record and complying with W.S. 34-21-954(b) (9-405(2)) in-

cluding the payment of the required fee. Upon presentation of a statement of release to the filing officer, he shall mark the statement with the hour and date of filing and shall note the same upon the margin of the index of the filing of the financing statement."

■ Taking the plain and ordinary meaning used by the legislature in § 34-21-955 in an attempt to glean legislative intent, we do not find any explicit language which requires filing by a secured party. Additionally, we find no Wyoming case law which mandates such a requirement.

Also, upon research of other jurisdictions, while the courts are split as to the necessity of filing releases by a secured party, we find the rationale espoused by the Oklahoma Supreme Court controlling. In *Texas Kenworth Company v. First National Bank of Bethany,* Okla., 564 P.2d 222, 227 (1977), a case dealing with secured parties, that court stated:

"The Uniform Commercial Code Comment following 12A O.S.1971 § 9-406, which deals with the release of financing statements, makes it clear that there is no duty to file a release."

That court, in another later case dealing with secured parties, went on to state:

" '[W]e attach no significance to the fact that no release or termination statement was filed.' " *First National Bank and Trust Company of Norman, Oklahoma v. Security National Bank of Norman, Oklahoma,* Okla., 676 P.2d 837, 840 (1984), quoting *Texas Kenworth Company v. First National Bank of Bethany,* 564 P.2d at 227.

The Federal Bankruptcy Court in the case of *In re Thayer,* 38 B.R. 412, 421 (1984) also dealing with a release by a secured party similarly provides that:

"[T]he Statement of Termination * * * not [being] filed, does not defeat the fact of the release: there is no requirement that such a statement be filed when collateral is released. Section 9-406 [§ 34-21-955] Uniform Laws Comments."

■ We find persuasive the reasoning offered by the Oklahoma Supreme Court. We hold that "[s]ince there is no duty to

file a release or termination statement, unless requested, and since there is no duty to make such a request," *Texas Kenworth Company v. First National Bank of Bethany*, 564 P.2d at 227, no importance is attached to the absence of the filing of a release statement by a secured party. We surmise that, if the Wyoming legislature had intended that a security release must be filed by a secured party pursuant to Wyoming statute, it would have provided such language.

Therefore, we proceed to the issue of whether the "Final Waiver of Lien" evidences an intent by Valley Bank to release its security interest. The answer to this issue is a matter of construction and, as such, we use the following criteria in making our determination:

1. "[T]he primary rule of construction is that the intention of the parties shall govern." 66 Am.Jur.2d, Release § 30 at 706 (1973).

2. "And for the purpose of ascertaining that intent, every part of the instrument is to be considered." Id., § 31 at 708.

3. "The intention of the parties is to be gathered from the entire instrument and in such inquiry that construction will be adopted which gives effect to each and every part of the instrument where that is possible. * * *

" * * * * ' * * * What is implied in the written instrument is as much a part of it as though it were expressed therein.' " *Lone Star State Life Ins. Co. v. Foster*, Tex., 250 S.W.2d 949, 951 (1952), quoting *Pennington v. Bevering*, Tex., 17 S.W.2d 772, 773 (1929).

4. "In construing the lienor's letter of release, we appropriately pointed out that the lienor's *expressed* intent and not his actual intent controls." (Emphasis in original.) *Lundstrom Construction Company v. Dygert*, 254 Minn. 224, 94 N.W.2d 527, 531 (1959).

Looking to the "Final Waiver of Lien," we cannot determine absolutely whether or not the intent of the lienor bank was to make a release. We question why the three lines were oddly placed at the top of the page and, specifically, why reference was made to the "[p]ayments made to Intermountain Brick through the Clerk of Court, Natrona County ( [$]9,895.00)." We find that a genuine issue of Valley Bank's intent exists because more than one possible inference may arise. Two reasonable inferences arising from relevant facts create a genuine issue of material fact making summary judgment inappropriate. *Cordova v. Gosar*, Wyo., 719 P.2d 625 (1986).

"Where a contract is ambiguous, its interpretation is a mixed question of law and fact. *Goodman v. Kelly*, Wyo., 390 P.2d 244, 247 (1964); *Worland School District v. Bowman*, Wyo., 445 P.2d 364, 366 (1968). The legal question is the ambiguity; thereafter, 'there exists a question of intent which the trier of fact must resolve.' *Goodwin v. Upper Crust of Wyoming, Inc.*, Wyo., 624 P.2d 1192, 1195 (1981). Further, when a contract is ambiguous the court will look to all of the surrounding circumstances and extrinsic evidence introduced in order to ascertain its true meaning. *Rouse v. Munroe*, Wyo., 658 P.2d 74, 78 (1983); *Mountain Fuel Supply Co. v. Central Engineering & Equipment Co.*, Wyo., 611 P.2d 863, 868 (1980); *Amoco Production Company v. Stauffer Chemical Company of Wyoming*, [Wyo., 612 P.2d 463 (1980) ]." *Western Utility Contractors, Inc. v. City of Casper*, Wyo., 731 P.2d 24, 28 (1986).

To determine the intent of Valley Bank, an inquiry by the trier of fact is necessary.

We find that a genuine issue of material fact exists and therefore summary judgment was inappropriate. Because we determine that the basis for summary judgment was improper, we do not address the remaining issues raised.

Reversed and remanded for a trial on the issues.

MACY, Justice, specially concurring.

I agree with the majority that summary judgment for Valley Bank should be reversed. However, I would go further and direct that summary judgment be awarded in favor of Intermountain Brick Company.

The language in question is clear and unambiguous:

"This l[ie]n release includes all backcharges, ( [$]18,701.23), *[p]ayments made to Intermountain Brick through the Clerk of Court, Natrona County ([$]9,895.00)* and Wyoming Block ( [$]854.73)[.] Also your final retainage of $70,155.04[.]

"FINAL WAIVER OF LIEN

"I, the undersigned Etsel E. Sommer and Lyle Taggart, of Etsel E. Sommers & Valley Bank in consideration of the sum of $99,606.00, to be paid to me by WESTATES CONSTRUCTION COMPANY, against the account of Etsel E. Sommers Masonry Construction and receipt of, will thereby be acknowledged, *hereby waive and release all lien or right to lien now existing or that may hereafter arise* from work or labor performed, or materials furnished on or before the 1st day of April 1986, for the improvement of the following described property situated in Natrona County, City of Casper, Wyoming—to wit: Natrona County Junior High School." (Emphasis added.)

Valley Bank had a perfected security interest in Sommer's accounts receivable. By signing the above final waiver of lien, Valley Bank specifically authorized Westates Construction Company to pay Intermountain Brick Company the disputed $9,895. It waived and released its security interest in exchange for receiving the $70,155.04 in retainage:

"Waiver can be determined as a matter of law where only one inference in regard to it may reasonably be drawn from the evidence introduced in the case, or from the undisputed facts. Moreover, where the only evidence as to waiver is a writing, its construction and interpretation and whether it constitutes a waiver is a question of law for the court." 28 Am.Jur.2d, Estoppel and Waiver § 174 at 864-65 (1966).