In re APOLLO TRAVEL, INC.,
Bankrupt.

## REPUBLIC ACCEPTANCE CORPORATION,
Appellant,

v.

T. Jay SALMEN, as Trustee, Appellee.

No. 77–1254.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1977.

Decided Dec. 29, 1977.

James S. Eriksson, Minneapolis, Minn., argued and on brief, for appellant.

T. Jay Salmen, St. Paul, Minn., argued and on brief, for appellee.

---

Before GIBSON, Chief Judge, BRIGHT, Circuit Judge, and TALBOT SMITH, Senior District Judge.[*]

GIBSON, Chief Judge.

This appeal presents a single difficult but interesting question arising under the Uniform Commercial Code[1] and its interaction with the bankruptcy laws. Republic Acceptance Corporation (Republic) seeks to recover from the trustee in bankruptcy a debt of the bankrupt, Apollo Travel, Inc. (Apollo), for breach of warranty of title and attorney fees in defending the title to checks and other negotiable instruments received by Apollo from its customers in payment of travel arrangements and transferred to Republic in payment of advances made to Apollo. The trustee has in his possession proceeds of collateral in which Republic had a perfected security interest. The district court[2] held that payment prior to bankruptcy of the main indebtedness secured by the collateral terminated Republic's security interest, and thus Republic was an unsecured creditor, barred from recovery because of failure to file a claim within the statutory six-month period. We affirm.

Apollo operated a travel agency through which it sold commercial carrier tickets to the public. Many of these sales were on credit in which Apollo would pay the carrier for the ticket before the traveler paid Apollo. To finance this operation, Apollo entered into an arrangement under which Republic would lend Apollo funds. On June 18, 1974, this arrangement was formalized by the execution of a security agreement and the granting of a security interest by Apollo.

The security interest extended to the then-owned or thereafter-acquired "collateral" defined as:

* * * open accounts receivable, contract rights, instruments, documents, chattel paper, general intangibles, and all forms of obligations owing to us, all proceeds thereof and all of our rights to any merchandise which is represented thereby.[3]

In the security agreement Apollo warranted that it would convey to Republic "good and unencumbered title to the collateral." Apollo also agreed:

We will pay any and all internal, office and out-of-pocket expenses and costs of collection (including reasonable attorneys' fees) incurred by you in your handling of or effort to enforce collections. Our obligations in respect to any such expenses, costs and charges shall be secured by the collateral.

The agreement provided for the assignment at regular intervals of all collateral to Republic, and:

All collateral assigned to you and any money due or owing from you to us or owing to us by the bank or finance company participating with you in extending loans to us shall at all times be security for all our debts, liabilities and obligations to you arising hereunder or otherwise, and may be applied by you to the payment of any such debts, liabilities or obligations, or to reimburse yourself for any expenses incurred by you in seeking to enforce payment of any collateral assigned to you or in seeking to enforce any of our obligations to you.

The security interest was perfected by filing a financing statement with the Minnesota secretary of state on June 20, 1974. Thereafter loans were made to Apollo and from time to time Apollo transferred nego-

---

[*] The Honorable Talbot Smith, Senior United States District Judge, Eastern District of Michigan, sitting by designation.

[1.] The Uniform Commercial Code has been adopted in Minnesota as Chapter 336 of the Minnesota Statutes. Although the Minnesota version has been revised some since its adoption, it is for our purposes identical with the 1962 Official Version of the code.

[2.] The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

[3.] A supplement to the security agreement extended the security interest to the inventory of Apollo.

tiable instruments to Republic in payment. The bankruptcy judge found that by February 12, 1975, both parties considered all loans by Republic to Apollo to be repaid in full.

On February 12, 1975, Apollo filed a petition in bankruptcy. During ensuing discussions between the bankruptcy trustee and Republic, the trustee did not request a termination statement[4] or a release statement.[5] Republic filed no claim as an unsecured creditor and did not make any other demand on the trustee until June 23, 1976, when the present suit was filed. It sought to subject the collateral in the hands of the trustee in Republic's lien for the amount of liabilities incurred (including attorney fees) in settling a lawsuit brought by the Air Traffic Conference of America (ATC) against Republic. In a Minnesota state court action ATC alleged that by agreement with Apollo, Apollo had acted as trustee in receiving payments for airline tickets and that ATC was the beneficiary of this trust. ATC asserted that the property Republic received from Apollo was trust property and under federal law ATC's rights were superior to those of a UCC secured party. *See* 49 U.S.C. § 1384. Although ATC's claim was for over $52,000, at oral argument counsel for Republic reported that it had settled the claim for under $1,000. Republic reported its attorney fees in the ATC action were approximately $10,000.

The small settlement in the state court suit is indicative to us that the ATC claim had little merit. Processing that case to trial would almost surely have resulted in judgment for Republic. In short, it cannot be contended seriously that the repayment

by Apollo of Republic's loans has failed due to a third party having an interest in the property used in the repayment. We are not faced with a situation in which the loan which was the primary obligation secured by the collateral remains unpaid. Republic's claim in this case depends on its contention that although its loans were repaid, the lien remained to secure performance of secondary promises contained in the security agreement.

*Westerlund v. Peterson*, 157 Minn. 379, 197 N.W. 110 (1923), included language that a lien is terminated by payment of the debt it secures.[6] The bankruptcy judge relied on this as the correct statement of applicable state law. However, *Westerlund* did not involve a security agreement which by its terms secured debts and obligations in addition to the loan prompting the granting of a lien. Because of that distinguishing feature as well as the more recent adoption of the Uniform Commercial Code, we would be reluctant to view *Westerlund* as controlling. Similarly, none of the other cases cited by the bankruptcy judge in his memorandum[7] and by the trustee in his brief in this appeal were precisely on point.

Although Republic cites several cases decided under the Uniform Commercial Code, it also fails to point out any case identical or substantially similar to this case. *In re Continental Vending Machine Corp.*, 543 F.2d 986 (2d Cir. 1976), makes it plain that a secured party in a Chapter X bankruptcy proceeding can recover attorney fees as a secured debt under a properly drawn agreement. There the loans which were central to the security agreement had not been repaid. In fact, additional loans had been

---

4. A termination statement may be demanded by a debtor whenever there is "no outstanding secured obligation and no commitment to make advances, incur obligations or otherwise give value." Minn.Stat. § 336.9–404. The comments make it clear that termination statements are for the benefit of debtors and are not required for the financing arrangements to be terminated. U.C.C. § 9–404, comments 1 and 2.

5. A release statement frees specific collateral from the security interest. Minn.Stat. § 336.9–406.

6. *Westerlund* is an odd case in which a law firm attempted to invoke a summary proceedings statute to secure a declaratory judgment that the fee it had retained in an earlier case was reasonable. The Minnesota court held against the attorneys on statutory grounds and on a state constitutional right to a jury trial.

7. 2 Bankr.Ct.Dec. 1517 (1976).

made to the trustees who were trying to salvage the debtor corporation. Nor is Republic's claim governed by the controversy over future advance clauses. *See, e. g., In re Rivet,* 299 F.Supp. 374 (E.D.Mich.1969); *Coin-O-Matic Service Co. v. Rhode Island Hospital Trust Co.,* 3 U.C.C. Reports 1112 (Super.Ct.R.I.1966). Here Republic has advanced no additional credit; it has merely incurred expense in retaining amounts paid to it by Apollo prior to bankruptcy.

Our research has also failed to reveal cases involving the exact issue presented here. However, after examining the Bankruptcy Act and the Uniform Commercial Code and the policies underlying each, we are convinced that the district court was correct in denying Republic any recovery.

In addition to relieving debtors, the purpose of the bankruptcy laws is to marshal the bankrupt's assets and distribute them to the creditors. *Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554, 35 S.Ct. 289, 59 L.Ed. 713 (1915). Although it is sometimes necessary to await the outcome of other litigation, delay is disfavored and avoided if possible. Bankruptcy Act § 57d; 11 U.S.C. § 93(d); *see also* 3 Collier on Bankruptcy ¶ 57.15[3] (14th ed. 1976).[8]

Although the ATC suit has now been settled, it was pending at the time this case was considered by the bankruptcy court. There were no means readily available to determine the merit, if any, of ATC's claims. Even now it would be difficult to determine the reasonable value of the attorney fees Republic incurred in defending in state court. Permitting such speculative "debts" to be asserted as secured claims in a bankruptcy action would unreasonably delay and impede the administration of the

bankruptcy laws. Already this litigation has delayed the distribution of the assets of Apollo by over a year. Had the ATC claim not been settled but instead had gone to trial, the delay in distribution to the other creditors might have lengthened into several years. We will not sanction a contractual device that could be used to delay bankruptcy proceedings for inordinate periods of time and which would have the effect of subordinating the trustee's position as a secured lien creditor [9] to claims arising after he has taken possession of assets and has marshaled them for distribution.

Allowing Republic to recover as a secured creditor in this factual context would also impede the UCC goal of a workable and fair commercial law.[10] Borrowers traditionally are in a weaker position than lenders. In this case the security agreement was on printed forms of Republic.[11] It covered nearly all types of property appropriate to a small family-run travel bureau. Interest was charged at the rate of 20% per annum and, as we have noted, numerous secondary promises were purportedly secured by the collateral.

Republic admitted in its complaint in this action that Apollo's indebtedness to Republic "was considered as substantially paid in full prior to February 12, 1975." If, despite substantial payment (in fact full payment of the loans), Republic continued to be a secured creditor, it could have refused to issue a termination or release statement for filing. This would have been a continuing cloud on Apollo's ability to obtain credit elsewhere. We do not hold that the promises to pay attorney fees and to warrant title were invalid, we only decide that these secondary, contingent liabilities were not

---

**8.** The district court also agreed with the bankruptcy court that Republic's claim could be rejected under Bankruptcy Act § 57d, 11 U.S.C. § 93(d). Republic contends that § 57d does not apply to secured claims. We have concluded that Republic's claim as of the date of bankruptcy was unsecured, thus we need not examine the reach of § 57d.

**9.** Under § 70c of the Bankruptcy Act (11 U.S.C. § 110(c)), the trustee has all the rights and powers of an ideal lien creditor. *Sequoia Ma-*

*chinery, Inc. v. Jarrett,* 410 F.2d 1116, 1119 (9th Cir. 1969).

**10.** *See, e. g.,* Minn.Stat. §§ 336.1–102 and 336.-1–103.

**11.** Part of the security agreement was cast in the form of a letter from Apollo to Republic. However, an examination of its provisions and the type used in filling in blanks makes it plain that Republic originated the agreement.

secured after the loans were repaid and bankruptcy intervened before any actual indebtedness arose.[12]

As of the date of bankruptcy, Republic had no claim against the bankrupt's estate. Although the warranty of good title to the items delivered to Republic could possibly relate back to antedate the bankruptcy, that warranty was not shown to be breached.[13] Obviously, Republic's claim for attorney fees and expenses relating to the ATC suit accrued after the bankruptcy and subsequent to the time the trustee took possession of the bankrupt's assets. Thus, any claim against the secured assets in connection with the subsequent ATC suit would be inferior to that of the trustee's position as a lien creditor, Bankruptcy Act § 70c, 11 U.S.C. § 110(c), as to the assets of the bankrupt.

In reaching this decision we emphasize that we express no views as to the validity of Republic's claim if the repayment of its loans had "failed" due to a meritorious claim by a third party. Nor do we decide whether or not Republic would have been entitled to recover as an unsecured creditor if it had filed a claim at the proper time.[14] Republic concedes that it must now recover as a secured creditor or not at all. Finally, we express no views as to the alternate holding of the bankruptcy court.[15]

Judgment affirmed.

12. The Minnesota UCC has been amended effective January 1, 1977, so that in most instances only advances made before a lien creditor's rights attach would be recognized as a secured claim under a properly perfected security transaction. A new paragraph (4) to § 9–301 reads as follows:

A person who becomes a lien creditor while a security interest is perfected takes subject to the security interest only to the extent that it secures advances made before he became a lien creditor or within 45 days thereafter or made without knowledge of the lien or pursuant to a commitment entered into without knowledge of the lien.

The above amendment, while not effective in this case, would prevent open-ended liabilities accruing after bankruptcy.

13. In light of the small settlement of the ATC suit, and the fact that neither Apollo nor the trustee had an opportunity to defend that suit, Republic is in no position to deny that it received good title from Apollo.

14. It is questionable whether the attorney fees incurred in the ATC suit fell within the class of expenses Apollo promised to pay.

15. See note 8, supra.