**In re Albert HENRY and Brigitte Henry, Debtors.**

**Bankruptcy No. 195–10017–7.**

United States Bankruptcy Court,
N.D. Texas,
Abilene Division.

June 30, 1995.

Britt Thurman, Thurman & Nix, Abilene, TX, for debtors.

Thomas M. Wheeler, Abilene, TX, for Norwest.

Max R. Tarbox, Chapter 7 Trustee, Lubbock, TX.

## MEMORANDUM OF OPINION ON MOTION TO AVOID LIEN

JOHN C. AKARD, Bankruptcy Judge.

Albert Joseph Henry and Brigitte Kay Henry (Debtors) moved the court to avoid the liens claimed by Norwest Financial Texas, Inc. (Norwest) on various items of personal property. Norwest objected to the motion, asserting that the Debtors could not avoid its lien on a 200–amp Lincoln welder (welder). The court finds the lien should be avoided.[1]

### FACTS

On January 27, 1995, the Debtors filed for relief under Chapter 7 of the Bankruptcy Code.[2] On March 14, 1995, they filed a Motion to Avoid Non–Judicial Lien with respect to the liens claimed by Norwest. On May 2, 1995, the court held a hearing in this matter. At the conclusion of the hearing, the court instructed the Debtors to file revised Statement of Financial Affairs and Schedules and established a briefing schedule.

On June 1, 1993, the Debtors borrowed $2,009.06 from Norwest. A list of personal property secured the loan. At that time Mr. Henry worked for Crown Cork & Seal Co. (Crown). The company considered his employment full-time, although he worked four days one week and three days the next. He wanted to begin a welding business on his days off. He purchased the welder from a third party. He credibly testified that he used the proceeds of the Norwest loan to buy additional equipment and for operating capital for his welding business. The welder cost $2,000. In preparing their list of property,

the Debtors valued the welder at $2,000. Mr. Henry credibly testified that a Norwest employee asked him the cost of a new welder. Mr. Henry stated a new welder would cost $6,500. Thereupon the employee changed the value of the welder to $6,500 and entered $2,000 in the "Owes" column. The note provided for total payments, including finance charges and insurance, of $3,204. The disclosed interest rate was 22.95%.

On December 2, 1993, the Debtors refinanced the note and received an additional cash advance of $1,014.91. Total payments, including finance charges and insurance, totaled $4,680.00. The disclosed interest rate was 20.30%. Norwest's witness testified that although the Debtors paid approximately $1,600 on the loan, only $245.10 was applied to principal. Norwest applied the balance to interest and charges. Mr. Henry testified that he engaged in the welding business on a part-time basis from the time he acquired the welder in 1993, until mid–1994 and that he has been in the welding business as his sole occupation since then. The Debtors claimed the Federal exemptions and asserted that their tools of the trade did not exceed the $1,500 value allowed.

### POSITIONS OF THE PARTIES

The Debtors claimed that the welder is part of Mr. Henry's tools of the trade and that if their value exceeds the $1,500 permitted under the Federal exemptions, the balance may be utilized through the "wild card" exemption. Norwest asserted three arguments. First, it claimed a purchase money security interest in the welder which was not extinguished by the December 1993 refinancing. It stated that Mr. Henry was not engaged in the welding business at the time the loan was made and its lien attached. Consequently, its lien cannot be avoided. Norwest further asserted that at the time the loan was made, Mr. Henry was a Crown employ-

---

**1.** This court has jurisdiction of this matter under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings *Nunc Pro Tunc* dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(1), (b)(2)(B), and (K).

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

ee. Consequently, he could not have been involved in "the" welding trade at that time. Norwest takes the position that anyone who is fully employed cannot have a second trade.

## DISCUSSION

### Purchase Money

■ Norwest's Branch Manager testified at the hearing. The agent who made the loan did not testify. Relying on comments in Norwest's records, the Branch Manager thought that Norwest provided the funds to purchase the welder. He stated that the loan was extended principally based on the fact that Mr. Henry was employed at Crown and that this matter was not handled as a business loan. He stated that in most purchase money situations, the check would be made payable jointly to the borrower and the seller. However, in this instance, the check was made solely to the Debtors. He acknowledged that they could "do with it as they wished." Mr. Henry credibly testified that he paid for the welder in full prior to the loan from Norwest. There is no indication on the documents introduced into evidence that Norwest retained a purchase money security interest. The court finds that there is insufficient evidence to establish that Norwest has a purchase money security interest.

### Exemptions

■ Initially the Debtors valued the tools of the trade at the $1,500 maximum exempt amount under the Federal exemptions. When testimony at the hearing on this matter indicated that the tools might have a higher value, the Debtors amended their exemptions to include any excess value in their "wild card" exemption under § 522(d)(5). Norwest asserts that the Debtors are estopped from making this exemption claim. Norwest's position is contrary to FED.

R.BANKR.P. 1009(a) which allows the Debtor to amend any schedule "as a matter of course at any time before the case is closed." The amended exemption claim is allowed.

### Tools of the Trade

■ Norwest questioned whether the exemption and lien avoidance for tools of the trade can be utilized by a person who is using those tools in a part-time business only. In *Walkington v. Production Credit Ass'n (In re Walkington)*, 42 B.R. 67, 71 (Bankr.W.D.Mich.1984), the court addressed the definition and scope of the phrase "tools of the trade of the debtor" as it is used in § 522(f).[3] It determined that "Congress intended it to have a common sense interpretation on a case-by-case basis with the key inquiry focusing on the necessity of an item to the individual debtor's particular business or employment." *Id.* at 72. Although Mr. Henry was a full-time employee at Crown at the time he purchased the welder, he also worked part-time as a welder. Subsequently, welding became his full-time occupation. A Virginia bankruptcy court stated that "[m]erely because a debtor lacks a history of endeavor in a particular occupation will not in itself cause a debtor to be denied a claimed exemption" and "does not mean that a debtor cannot change occupations and assert exemptions relating to that new occupation." *In re Samuel*, 36 B.R. 312, 315 (Bankr.E.D.Va.1984). Based on the facts of this case, the court holds that the welder qualifies as a tool of the trade under § 522(f) for the purposes of exemption and lien avoidance.

### Lien Determination Date

■ Norwest also questioned whether liens on property claimed as exempt should be determined as of the date the bankruptcy

---

**3.** As stated in *In re Trainer*, 56 B.R. 21, 23 (Bankr.S.D.Tex.1985), "[t]he legislative history of § 522(f) indicated that the drafters of the Code enacted the lien avoidance of that section primarily to prevent over reaching creditors who take security interest [sic] in debtor's household goods and small hand tools from repossessing or threatening to repossess that property which has little realizable market value upon repossession and sale by the creditor, but high replacement cost for the debtor who needs the item. The theory behind the provision is that there is no real harm to the creditor because the collateral has insignificant resale value and, therefore, no *real* collateral value, and the enactment of the provision was, therefore, not a significant taking of any property from the creditor and was within constitutional bounds. H.Rep. No. 95–595, 95th Cong. 2nd Sess. (1978) 127 U.S.Code Cong. & Admin.News pp. 5787, 6088."

petition is filed, or as of the date the lien attached. As previously stated by this court in *Maricle v. Home Fed. Sav. & Loan Ass'n (In re Maricle),* 25 B.R. 36 (Bankr.N.D.Tex. 1982), "[n]ormally the date upon which the bankruptcy petition is filed is the relevant date for determination of exemption issues." *Id.* at 38–39. Generally creditor claims are determined as of the date of filing. *In re Camp,* 78 B.R. 58, 64 (Bankr.E.D.Pa.1987), *as supplemented,* 80 B.R. 347. Exemption claims are also established as of the date of filing for bankruptcy. *Windfelder v. Rosen (In re Windfelder),* 82 B.R. 367, 371 (Bankr. E.D.Pa.1988).

### CONCLUSION

The court holds that Norwest did not have a purchase money security interest in the welder, that the welder qualifies as a tool of the trade of the Debtors, and that liens on property claimed as exempt are determined as of the date the bankruptcy petition is filed. Therefore, Norwest's objection to the motion to avoid the lien on the welder is overruled and the Debtors' motion will be granted.

ORDER ACCORDINGLY.[4]

---

**4.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to FED. R.BANKR.P. 7052 which is made applicable to Contested Matters by FED R.BANKR.P. 9014. This Memorandum will be published.