**In re Richard H. FRIEDBERG, Debtor.**

**FDIC, as Receiver of the Connecticut Bank and Trust Co., N.A., Plaintiff–Appellant,**

v.

**Joel LEWITTES, Plan Trustee, Defendant–Appellee.**

**No. 95 Civ. 1868 (DAB).**

United States District Court, S.D. New York.

Feb. 22, 1996.

Hughes Hubbard & Reed, New York City (David M. LeMay, Ross Lipman, Melissa A. Crane, of counsel), for Plaintiff–Appellant.

Parker Chapin Flattu & Klimpl, LLP, New York City (Lee Stremba, of counsel), for Defendant–Appellee.

*MEMORANDUM and ORDER*

BATTS, District Judge.

Plaintiff appeals the decision of Judge Cornelius Blackshear, United States Bankruptcy Judge.

## I. FACTUAL BACKGROUND

Plaintiff-appellant, the Federal Deposit Insurance Corporation ("FDIC"), is the Receiver of the New Connecticut Bank and Trust Company, N.A. ("CBT") (collectively "Plaintiff"), and a creditor in the underlying bankruptcy action. Joel Lewittes, Defendant–Appellee, was the Chapter 11 Trustee for Richard H. Friedberg, debtor ("Debtor"), and, upon approval of a plan for reorganization, became the Plan Trustee ("Trustee"). As the Plan Trustee, Defendant is responsible for administering the Debtor's First Amended and Restated Plan of Reorganization.

CBT's predecessor-in-interest made loans to Debtor that were not repaid. (Second Am.Compl.Commencing Adversary Proceedings ("Compl.") ¶ 10.) Those loans were secured by two categories of collateral; now held by FDIC, as Receiver. (*Id.*) First, are the assets of Cinema Shares International Television, L.P. ("Cinema Shares"), including a film library. (*Id.*) Second, are promissory notes issued by National Housing Partnership ("NHP"), in the face value of $1,338,000 (collectively "the Collateral"). (*Id.* ¶ 11.)

On May 1, 1987, Debtor filed for Bankruptcy under Chapter 11. (*Id.* ¶ 9.) On October 12, 1993, Trustee submitted the First Amended and Restated Plan of Reorganization for the Estate of Debtor ("Plan").[1] On January 12, 1994, the court signed an Order confirming the Plan. (*Id.* ¶ 16.) Under the Plan, Plaintiff, if it voted in favor of the Plan, would be the holder of the Class 4 Claims. (*Id.* ¶ 17; Plan § 2.4.) Section 3.4(a)(i) of the Plan, addressing the Class 4 Claim, provides that Plaintiff be allowed a claim of $5,200,000. (Compl. ¶ 17.) Section 3.4(a)(iii) provides for a reduction in the amount of Plaintiff's claim by any recovery obtained, within sixty days after confirmation of the Plan, from the liquidation of the secu-

---

1. The Plan was negotiated over several months between Plaintiff and the Plan Trustee.

rity interest in the collateral held by Plaintiff. (*Id.*)

Section 3.4(a)(iv) of the Plan requires that the Plaintiff notify Trustee of the value of the collateral within 70 days of the confirmation of the Plan. (*Id.*) If Plaintiff failed to notify the Trustee, then the collateral would be found equal to the amount of the Plaintiff's Class 4 Claim, effectively extinguishing any further right of recovery by the Plaintiff, except from the collateral itself. (*Id.*)

The Trustee claims that he never received written notice of the value of the collateral from Plaintiff. Therefore, he deemed that the value of the collateral was that of the amount of the allowed claim of $5,200,000. (*Id.* ¶ 21.) On April 5, 1994, the Trustee filed a Plan Trustee's Statement of Valuation with the bankruptcy court, stating that no stated value had been provided by Plaintiff. (*Id.*, A.R. Ex. 8.) As a result, the Trustee determined the unliquidated collateral to be deemed equal to the Class 4 Claim, and transferred the rights in the collateral to Plaintiff, extinguishing any further interest or claims.[2]

Plaintiff claims it timely notified the Trustee of the value of any collateral it held. On March 11, 1994, the Plaintiff's counsel sent a letter to Trustee's counsel detailing the efforts made to sell the balance of the Cinema Shares film library for $23,500; "Godzilla vs. Cosmic Monster" was not sold: "The current estimate of the release price on the Godzilla film is approximately $80,000." (Appellate Record ("A.R.") Ex. 5.) No mention was made in this letter of the value of any other assets of Cinema Shares.

On March 10, 1994, Plaintiff's counsel sent a letter to NHP's counsel, requesting payment of the notes; a copy of the letter was sent to the Trustee's attorney. (A.R. Ex. 4.) On March 17, 1994, Plaintiff's attorney received a response from NHP, the note maker, stating that the FDIC is "not entitled to any payments under the notes." (A.R. Ex. 6.) On March 23, 1994, Plaintiff's counsel forwarded this letter with a cover letter, merely stating: "Enclosed is the response of

NHP to our demand letter. I will be out of the office until April 1. Please call me anytime thereafter to discuss this matter." (A.R. Ex. 7.)

Plaintiff argues this series of letters satisfies Section 3.4(a)(iv) of the Plan, and hence, the Trustee was prohibited from filing the Plan Trustee Statement of Valuation that effectively extinguished Plaintiff's Class 4 Claims.

## II. PROCEDURAL BACKGROUND

On May 27, 1994, Plaintiff filed its Complaint. Plaintiff filed a Second Amended Complaint Commencing Adversary Proceedings on June 7, 1994, requesting declaratory and injunctive relief. Trustee moved for summary judgment dismissing the Complaint. On June 28, 1994, Judge Blackshear held a hearing on both motions; he denied Plaintiff's request for injunctive relief from the bench. On December 28, 1994, the parties again appeared before Judge Blackshear for a status conference, at which Judge Blackshear granted Trustee's motion for summary judgment. That decision was confirmed, without opinion, in an Order and Judgment dated January 17, 1995, which Order dismissed the Complaint with prejudice.

## III. DISCUSSION

The two issues to be decided are whether the four letters sent to the Trustee by Plaintiff satisfied Section 3.4(a)(iv) of the Plan; and if so, whether the bankruptcy judge erred in denying a stay of the proceedings until completion of the appeal.

### A. Standard of Review

■ Orders issued by a bankruptcy court are subject to appellate review pursuant to Bankr.R. 8013. The district court reviews the bankruptcy court's findings of fact under a clearly erroneous standard, and any conclusions of law *de novo*. *Green Point Bank v. Treston*, 188 B.R. 9, 11 (Bankr.S.D.N.Y. 1995); *In re Prudential Lines, Inc.*, 170 B.R. 222, 228 (S.D.N.Y.1994) (citing *Brunner v.*

---

2. CBT received $540,000.00 from the Debtor's estate prior to valuation of the collateral.

(Compl. ¶ 18; Plan § 3.4(a)(ii)(1).)

*New York State Higher Educ. Servs.,* 831 F.2d 395, 396 (2d Cir.1987); *IAM v. Eastern Air Lines Inc.,* 121 B.R. 428, 432 n. 5 (S.D.N.Y.1990)); *see also* Bankr.R. 7052 and Fed.R.Civ.P. 52. The Bankruptcy Court made no findings of fact; hence, the Court will review the decision *de novo.*

### B. The Plan of Reorganization

■ Upon confirmation of the Plan, all prior obligations and rights of the parties were extinguished and replaced by the Plan. 11 U.S.C. 1141(a); *In re Hooker Investments, Inc.,* 162 B.R. 426 (Bankr.S.D.N.Y. 1994) (citing *Sure–Snap Corp. v. State St. Bank and Trust Co.,* 948 F.2d 869, 873 (2d Cir.1991)); *In re Riverside Nursing Home,* 137 B.R. 134, 137 (Bankr.S.D.N.Y.1992). The Plan is essentially a contract between the parties to the Plan.

■ Retention of the court's jurisdiction, including enforcement of a plan, is also determined by the agreed-upon terms of a plan. *See In re Johns–Manville Corp.,* 7 F.3d 32 (2d Cir.1993); *In re Dilbert's Quality Supermarkets, Inc.,* 368 F.2d 922 (2d Cir.1966). The court below had jurisdiction, as is set out in the Plan. (A.R. Ex. 1 at 65.)

Section 3.4(a)(iv) of the Plan states that

[i]n the event that either category of the CBT Collateral has not been liquidated within 60 days after the Confirmation Date, CBT shall within 10 additional days submit to the Plan Trustee a written statement ("Valuation Statement") setting forth with respect to each category of unliquidated CBT collateral a proposed valuation ("Stated Value"). If CBT fails to specify a Stated Value *for either or both* of the said categories of unliquidated CBT Collateral within the time allowed, including any extensions thereof as may be agreed upon in writing between CBT and the Plan Trust-

ee, then the aggregate Stated Value of the unliquidated CBT Collateral shall be deemed equal to the Allowed Amount of CBT's Class 4 Claim." (A.R. Ex. 1 at 27.) (emphasis added.)

None of the terms used in this Section are defined by the Plan.

#### 1. *Valuation Statement*

■ The parties differ as to whether the Trustee was properly notified pursuant to Section 3.4(a)(iv) by receipt of the letters described above. Plaintiff argues that the Plan did not require that a specific form letter with clear language be sent.[3] Defendant argues that the letters were not an unequivocal statement of value and that there were additional assets never mentioned in the letters.

##### a. The Cinema Shares Assets

On March 11, 1994, Plaintiff sent a letter to the Trustee stating that, with the exception of one film in the Cinema Shares film library, the property was sold for $25,300. The remaining film was valued at $80,000. However, the letter did not state any value with regard to the other assets allegedly retained by Cinema Shares.[4]

Defendant argues that the values given by the Plaintiff, limited solely to the film library, are insufficient to fulfill the requirement set out in Section 3.4 to propose a value for all of the Cinema Shares assets. The Court agrees. The Plaintiff in his letter proposed a value for the remaining film and gave a value for films in the library that were sold. While the Plaintiff has complied with Section 3.4 with regard to the films, Defendant argues that there were other assets, specifically, accounts receivable, belonging to Cinema Shares. Although not "received" until August 1994, (A.R. Ex. 21), after the valuation

---

**3.** Plaintiff, in its motion papers suggests the Trustee may have been looking for "perhaps a formal court paper bearing a caption and title 'Statement of Valuation'; or, perhaps, a 6–foot-star–shaped chart with valuation estimates depicted in fluorescent colors in Old English type next to hand-painted images of the collateral." (P.'s Brief at 10.)

**4.** Defendant claims that Cinema Shares had *inter alia* $500,000 of receivables as well as cash held

by the Plan Trustee. However, there are conflicting reports as to whether the Plaintiff was aware of these assets at the time they submitted the valuation letters.

Furthermore, Defendant claims that the Plaintiff permitted the properties to depreciate in value by waiting years before moving to collect on them.

statement was due, Plaintiff claims it knew nothing of any assets other than the films. Plaintiff's alleged ignorance of the extent of its assets should not be excused and thereby penalize the Trustee.

### b. The NHP Notes

On March 23, 1994, the March 17, 1994 letter was forwarded to the Trustee with a cover letter by Plaintiff. March 23rd was the deadline for providing the value information to the Trustee. The cover letter, quoted in full above, set forth as much information about the sender's travel plans as it did about any stated value the Plaintiff was thereby forwarding. Indeed, the invitation "to discuss this matter" could be read to suggest that there was more to be said or done by Plaintiff.

Plaintiff argues the self-serving and puffing exchange between it and NHP should be interpreted by the Trustee to comply with Section 3.4(a)(iv). Defendant argues that Plaintiff does not state any value at all, in any of this correspondence, and hence Plaintiff has failed to comply. The Court finds that the letters are not sufficient, and Plaintiff has failed to comply with Section 3.4(a)(iv). Hence, the Order of the court below is affirmed.

### C. Stay of Appeal

As the Court has affirmed Judge Blackshear's opinion, the stay of appeal issue is moot.

## IV. CONCLUSION

For the reasons set forth above, the Order below dated January 17, 1994, is hereby affirmed.

SO ORDERED.