In re COMMERCIAL MILLWRIGHT SERVICE CORP., Debtor.

United States of America, Plaintiff,

v.

Lincoln Savings Bank and Habbo Fokkena, Trustee, Defendants.

Habbo G. Fokkena, Chapter 7 Trustee, Counter–Claimant and Cross–Claimant,

v.

United States of America and Lincoln Savings Bank, Counter–Defendants and Cross–Defendants.

Bankruptcy No. 96–60007–W. Adversary No. 96–6068–W.

United States Bankruptcy Court, N.D. Iowa.

Feb. 23, 1998.

Martin McLaughlin, Assistant U.S. Attorney, Cedar Rapids, IA, for United States of America on behalf of IRS.

Habbo Fokkena, Clarksville, IA, for Chapter 7 Trustee.

Carroll Reasoner, Cedar Rapids, IA, for Lincoln Savings Bank.

## ORDER RE MOTION TO ADJUDICATE LAW POINTS

PAUL J. KILBURG, Bankruptcy Judge.

This matter came before the undersigned on January 8, 1998 for Oral Arguments on the Motion to Adjudicate Law Points filed by Chapter 7 Trustee Habbo G. Fokkena, Defendant, Counter–Claimant and Cross–Claimant. Martin McLaughlin appeared for the United States on behalf of the Internal Revenue Service, Plaintiff. Carroll Reasoner appeared for Defendant Lincoln Savings Bank. Habbo G. Fokkena appeared as Chapter 7 Trustee. After hearing arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K).

## STATEMENT OF ISSUES

Trustee moves for pre-trial resolution of certain legal questions. He states that the underlying facts are not in dispute but the legal implications from the facts are disputed. Trustee presents the following issues to the Court:

A. Does Lincoln Savings Bank have a perfected lien in newly acquired property of Debtor?

B. What is the lien status of the IRS?

## STATEMENT OF THE CASE

In December 1989, Debtor Commercial Millwright Service Corp. filed a Chapter 11 petition in bankruptcy. The Court confirmed a plan of reorganization on July 30, 1991. Lincoln Savings Bank and the IRS were secured creditors in that case. The Bank perfected its security interest on April 17, 1989 by filing a UCC financing statement. The IRS perfected its liens in August and December 1989 by filing notices of tax liens.

Debtor's confirmed plan contained the following relevant provisions:

3.03(c) The liens and encumbrances upon the property securing [the Bank's] claim, as of the time of filing, shall remain as valid liens and encumbrances until this claim is paid in full ...; (f) the super priority lien existing as a result of the post-petition financing shall remain as a valid lien until such time as that post-petition financing has been paid in full.

3.04(c) The IRS pre-petition liens which existed at the time of the filing shall remain as valid liens and encumbrances against the property of the Debtor until such time as this claim has been paid in full.

After confirmation, Debtor paid off the prepetition notes to the Bank as well as the postpetition financing. It also borrowed new money from the Bank and paid on new notes. These new notes referred to the 1989 security agreement. The Bank did not file a new UCC financing statement regarding the new notes. Instead, it filed a continuation statement on March 25, 1994 relating to the original 1989 financing statement.

Debtor did not pay off the IRS claim. The IRS states it is undisputed that it received no payment under the plan. The Bank states it has no information regarding whether Debtor paid anything to the IRS under the plan and the issue should be determined later by the Court.

Debtor filed its second Chapter 11 petition on January 3, 1995. This case converted to Chapter 7 on February 2, 1996.

The first IRS lien perfected in August 1989 expired July 26, 1995. The second IRS lien perfected in December 1989 expired October 25, 1995. A third lien perfected March 21, 1994 was released by the IRS September 20, 1996. The IRS is not asserting any rights under the third lien.

The IRS initially filed this adversary proceeding asserting priority of its tax lien interests over the interests of the Bank. Trustee has since asserted rights under § 544 to avoid the liens of the Bank and the IRS as being unperfected.

Trustee argues that the Bank's postconfirmation secured interest is unperfected because of the Bank's failure to file a new UCC financing statement. The Bank asserts its 1989 financing statement remained valid to perfect its postconfirmation secured interest. This argument is based on language in the new notes in which, according to the Bank, Debtor "reaffirmed and ratified" the original 1989 Security Agreement. The 1989 Security Agreement states it is continuing and secures any indebtedness of Debtor to the Bank, "whether now existing or hereafter incurred." The Bank argues its postconfirmation advances to Debtor are secured and have the same priority as prepetition secured interests perfected by the 1989 financing statement.

The Bank and Trustee argue that the IRS liens were released under their own terms and by operation of law under 26 U.S.C. § 6325(a) because they were not refiled before they expired. The IRS asserts the liens did not terminate on the stated expiration date. It argues the confirmed plan in Debtor's first Chapter 11 case states the liens remain valid until the IRS claim is paid in full. Furthermore, the IRS asserts refiling is held in abeyance during the pendency of this case.

## TIME LINE

| | |
|---|---|
| 4/17/89 | Bank filed financing statement |
| 8/16/89 | IRS filed notice of first tax lien |
| 12/13/89 | IRS filed notice of second tax lien |
| 12/29/89 | Debtor Commercial Millwright filed first Ch. 11 petition |
| 7/30/91 | Ch. 11 Plan confirmed (provides liens of Bank and IRS remain valid until claims paid in full) |
| 3/25/94 | Bank filed continuation of 4/89 financing statement |
| 1/3/95 | Debtor filed second Ch. 11 petition |
| 7/26/95 | Refiling deadline for first IRS tax lien |
| 10/25/95 | Refiling deadline for second IRS tax lien |
| 2/2/96 | Case converted to Ch. 7 |

## CONCLUSIONS OF LAW

The Bank argues no Federal rule allows adjudication of law points. It does desire to have the Court interpret the law to assist the parties in settlement discussions. The Bank requests the Court issue a non-binding interpretation of the law.

The Court in its discretion will treat Trustee's motion as a motion for partial summary judgment. This is authorized by Fed.R.Civ.P. 56 which states that a court may enter summary judgment in a party's favor upon all or any part of that party's claim, counterclaim or cross-claim. Summary judgment, in whole or whatever part of a matter can be so determined, is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *In re Summit Airlines, Inc.,* 160 B.R. 911, 916 (Bankr.E.D.Pa.1993). In this case, the Court finds that the Statement of the Case and Time Line set out material facts which exist without substantial controversy. *See* Fed.R.Civ.P. 56(d).

## STATUS OF CLAIMS IN CONVERTED CASE

Creditor claims are determined as of the date of filing of the petition. 11 U.S.C. § 502(b); *In re Henry,* 183 B.R. 748, 751 (Bankr.N.D.Tex.1995). Under § 348(a), conversion from Chapter 11 to

Chapter 7 does not affect the date of filing for purposes of determining the validity and priority of secured claims. *General Elec. Credit Corp. v. Nardulli & Sons,* 836 F.2d 184, 192 (3d Cir.1988); *In re Pauling Auto Supply, Inc.,* 158 B.R. 789, 795 (Bankr.N.D.Iowa 1993). The Court will determine the validity and priority of the claims of the Bank and the IRS as of January 3, 1995, the day Debtor filed its Chapter 11 petition in this case.

## EFFECT OF PREVIOUS CHAPTER 11 CASE

Both the Bank and the IRS had secured claims in Debtor's previous Chapter 11 case. The Bank's secured interest had priority because it was "first in time" to perfect. The Bank perfected its interest by filing a financing statement on April 11, 1989. The IRS perfected its interest by filing Notices of Tax Liens on August 16, 1989 and December 13, 1989. These secured claims were acknowledged and provided for in Debtor's Plan of Reorganization confirmed on July 30, 1991.

■ A secured creditor who participates in a Chapter 11 reorganization may lose its prepetition lien by confirmation of a reorganization plan which does not expressly preserve the lien. *In re Be–Mac Transp. Co.,* 83 F.3d 1020, 1025 (8th Cir.1996). Under § 1141, after confirmation, the property dealt with by the plan is free and clear of all interests of creditors and the debtor is discharged from all preconfirmation debt. *Id.*

■ Upon confirmation of the plan, all prior obligations and rights of the parties are extinguished and replaced by the plan. *In re Friedberg,* 192 B.R. 338, 341 (S.D.N.Y.1996); 11 U.S.C. § 1141(a). The plan is essentially a contract between the parties to the plan and binds both debtors and creditors. *Friedberg,* 192 B.R. at 341. "[P]ursuant to § 1141, once a plan under Chapter 11 is confirmed, a creditor can no longer enforce its pre-Chapter 11 lien rights, but is limited to the rights granted in the plan." *In re W.F. Monroe Cigar, Co.,* 166 B.R. 110, 112 (N.D.Ill.1994); *see also In re Arctic Enters., Inc.,* 68 B.R. 71, 79 (D.Minn.1986) (concluding confirmation order extinguishes creditor's prepetition lien). The reorganized debtor operates as a new entity, free of its preconfirmation obligations except as may have been provided for in the confirmed plan. *In re Roy Gooden Plumbing & Sewer Co.,* 156 B.R. 635, 637 (Bankr.E.D.Mo.1993).

■ Under the foregoing, the secured claims of both the Bank and the IRS which arose prior to Debtor's previous Chapter 11 case were extinguished at confirmation. The confirmed plan, however provided that their prepetition claims remained as valid liens until the claims were paid in full. The Court will give effect to this provision in the confirmed plan. It is undisputed that the Bank's prepetition claim, as well as its postpetition priority claim, have been paid in full. It is also undisputed that the IRS's prepetition claim has not been paid in full.

## STATUS OF THE IRS LIEN

■ On the date of filing the petition in this case, the IRS liens, validated and retained until full payment by the confirmed plan in Debtor's previous Chapter 11 case, remained perfected. This leads to the conclusion that the IRS liens remain valid in this case with priority determined by the Notices of Tax Liens perfected in August and December 1989. The Bank and the Trustee, however, argue that the IRS's failure to timely refile these liens postpetition results in their cancellation.

The Court disagrees, based primarily on the Code's direction that claims are determined as of the date of filing of the petition. 11 U.S.C. § 507(b). Furthermore, courts have held that secured interests which expire after the commencement of the case maintain secured status over the trustee. In *In re Decker,* 199 B.R. 684, 687 (9th Cir. BAP 1996), the IRS held a lien for federal estate taxes which expired by statute six months after the executor of

the estate filed a Chapter 11 petition. The court held that the tax period's expiration was stayed during the debtor's bankruptcy case by § 108(c). *Id.* at 688. It noted that any other result "would create the 'substantial inequity' of allowing the period to expire while the bankruptcy laws stayed action to save the lien, and would permit debtors to unilaterally shorten limitations periods by the strategic filing of a bankruptcy petition." *Id.*, citing *In re Morton,* 866 F.2d 561, 566 (2d Cir.1989).

This result was also reached in *City of Bridgeport v. Debek,* 210 Conn. 175, 554 A.2d 728, 734 (1989) (applying Bankruptcy Act), concerning state tax liens. Other courts have reached similar conclusions considering U.C.C. financing statements which expire during bankruptcy proceedings. *See In re Roth,* 171 B.R. 357, 360 (Bankr.D.S.D.1994) (holding that secured interest which remained perfected under the U.C.C. at the petition date was a secured claim in Chapter 12 case); *Nardulli,* 836 F.2d at 192 (holding that secured creditor whose financing statement expires after commencement of the case maintains secured status over trustee).

The Court concludes the IRS claims constitute secured claims in this case. The confirmed plan in Debtor's previous Chapter 11 case retained their character as valid liens until paid in full. At the date of filing the Chapter 11 petition in this case, the IRS claims were not paid in full. Determining the status of claims on the petition date in this case, the IRS claims are valid liens. Furthermore, postpetition expiration of the period for refiling the tax liens to retain perfection does not extinguish the IRS's secured interest.

 The Bank argues the IRS lien should be limited to Debtor's property interests in existence at the filing of its first Chapter 11 petition. Federal law governs the extent and the relative priority of federal tax liens. *United States v. Equitable Life Assurance Society,* 384 U.S. 323, 330, 86 S.Ct. 1561, 16 L.Ed.2d 593 (1966); *Bremen Bank & Trust Co. v. United States,*

131 F.3d 1259, 1263 (8th Cir.1997). A federal tax lien extends to all property of the debtor and continues until the liability is satisfied or becomes unenforceable by reason of lapse of time. *Bremen Bank,* 131 F.3d at 1263; 26 U.S.C. §§ 6321, 6322. Once the IRS files a Notice of Tax Lien, it is entitled to priority to property acquired thereafter by the debtor as against competing lienors whose liens attach upon the debtor's acquisition of such property. *United States v. McDermott,* 507 U.S. 447, 455, 113 S.Ct. 1526, 123 L.Ed.2d 128 (1993); 26 U.S.C. § 6323.

 Under the Bankruptcy Code, property acquired by the debtor after commencement of the case is not subject to liens from prepetition security agreements. *In re May Reporting Servs., Inc.,* 115 B.R. 652, 657 (Bankr.D.S.D.1990); 11 U.S.C. § 552(a). Section 552(a), however, applies only to liens arising from consensual security agreements. *Id.; In re County of Orange,* 189 B.R. 499, 502 (C.D.Cal.1995). A federal tax lien, which is a nonconsensual secured interest, attaches to property acquired by a debtor/taxpayer even subsequent to the filing of a bankruptcy petition, notwithstanding the provisions of § 552(a). *May Reporting,* 115 B.R. at 657; *In re Crossroads Mkt., Inc.,* 190 B.R. 269, 270 (Bankr.N.D.Miss.1994); *contra In re Connor,* 27 F.3d 365, 366 (9th Cir.1994) (stating, in Chapter 7 case, that the broad reach of a federal tax lien does not apply to property acquired after bankruptcy).

The IRS lien, retained and validated by Debtor's initial Chapter 11 confirmed plan, remains a perfected federal tax lien. Nothing in the language of the plan changes the rights of the IRS under 26 U.S.C. § 6321 which provides that tax liens attach to a debtor/taxpayer's rights in after-acquired property. Further, the Bankruptcy Code does not limit the extent to which tax liens attach to property obtained by a debtor/taxpayer after the commencement of a case.

In summary, the Court concludes the IRS secured claims are determined as of the petition date in this case. The fact that the refiling deadline for the Notices of Tax Liens expired postpetition has no effect on their validity. The priority and extent of these tax liens are determined by federal statutes. The IRS liens attach to Debtor's property acquired after the plan in the original Chapter 11 case was confirmed. Priority is determined by reference to the filing dates of the Notices of Tax Liens in August and December 1989.

## THE BANK'S CLAIM

■ The Bank's secured claims arising prior to and during Debtor's previous Chapter 11 case were validated and retained by the confirmed plan until paid in full. As of the date of filing the petition in this case, those claims were paid in full and, thus, the Bank's prepetition secured interests in Debtor's first Chapter 11 case were extinguished. Subsequent lending by the Bank to Debtor referred to the Bank's original security agreement and the financing statement filed April 11, 1989. The Court must determine (1) whether the debt arising after plan confirmation in Debtor's first Chapter 11 case is a perfected secured claim in this case and, (2) if so, whether it has priority over the IRS claim.

The Eighth Circuit has referred to plan confirmation as having the effect of "extinguishing any lien the [creditor] may have had and terminating its UCC filings." *Be–Mac Transp.*, 83 F.3d at 1027 (concluding bankruptcy court was wrong to disallow and extinguish secured claim because of untimely filing of proof of claim). The confirmed plan is, in effect, a substitute for the original security documents. *See Friedberg*, 192 B.R. at 341. Generally, if a subsequent agreement constitutes a substitute contract, the creditor cannot enforce the obligations in the original agreement. *In re McLaughlin Farms, Inc.*, 120 B.R. 493, 504 (Bankr.N.D.Iowa 1990) (considering whether security agreement outlived later settlement agreement).

■ A lien from a prepetition security agreement on after-acquired property is terminated under § 552(a). *In re Drewes*, 68 B.R. 153, 154 (Bankr.N.D.Iowa 1986). A secured creditor therefore has no lien rights in accounts receivable generated postpetition. *In re Airport Inn Assocs., Ltd.*, 132 B.R. 951, 961 (Bankr.D.Colo. 1990) (Melloy, J.). Section 552(a) suspends the operation of after-acquired property clauses during a Chapter 11 case. *In re Kucera*, 123 B.R. 852, 854 (Bankr. D.Neb.1990). Once a plan is confirmed, the rights of secured creditors are determined by the plan. *Id.*

■ For a creditor to continue its prepetition lien in postpetition property, it must obtain a court order for a "rollover lien." *In re Three Partners, Inc.*, 199 B.R. 230, 239 (Bankr.D.Mass.1995). If a creditor fails to obtain an order approving the continuation of its lien on after-acquired property, § 552(a) prevents the prepetition lien from attaching to later acquired property of the estate or of the debtor. *In re Cross Baking Co.*, 818 F.2d 1027, 1029 (1st Cir.1987). The secured party bears the burden to prove its prepetition lien retains validity as a postpetition lien on after-acquired property of the debtor. *In re Sherwood Ford, Inc.*, 125 B.R. 957, 962 (Bankr.D.Md.1991), *aff'd* 1992 WL 295951 (D.Md. Sept. 17, 1992).

■ Under the foregoing, the Bank's secured interest in after-acquired property terminated at the time Debtor filed its first Chapter 11 petition. This interest was suspended during the pendency of the Chapter 11 case. The Bank did not obtain a court order for a rollover lien during the case.

■ Debtor's confirmed plan states: "The liens and encumbrances upon the property securing [the Bank's] claim, as of the time of filing, shall remain as valid liens and encumbrances until this claim is paid in full." The provisions of a confirmed plan bind the debtor and all credi-

tors. 11 U.S.C. § 1141(a). The confirmed plan is a binding contract and res judicata as to all issues decided. *In re Laing,* 31 F.3d 1050, 1051 (10th Cir.1994).

 In discerning the meaning of a plan, general rules of contract interpretation apply. *United States v. Cook,* 147 B.R. 513, 516 (D.S.D.1992). The Court's goal is to ascertain and give effect to the parties' intent by looking to the language used and examining the contract in its entirety. *Id.* Only when the language of the Plan is ambiguous may the court turn to other aids of construction and parol evidence. *In re Doty,* 129 B.R. 571, 590 (Bankr.N.D.Ind.1991).

The quoted language in the plan does not explicitly refer to the Bank's floating lien in after-acquired property. By operation of § 552(a), that lien was suspended at the time of filing the petition in Debtor's first Chapter 11 case. In light of that section, the Court concludes the parties did not intend to retain the Bank's floating lien rights through the language of the plan. *Cf. In re Blackwelder Furniture Co.,* 31 B.R. 878, 880 (Bankr.W.D.N.C. 1983) (finding plan ratified secured interest in after-acquired inventory by language stating the secured claims "shall remain unaltered and are not impaired"). Therefore, unlike the IRS's tax lien, the Bank's secured interest, as validated and retained in the confirmed plan, does not extend to after-acquired property.

The effect of the plan was to retain the Bank's lien to the extent it existed at the date of filing, excluding rights in after-acquired property, until the debt was paid in full. The Bank's rights in after-acquired property, suspended during the first Chapter 11 case, terminated when the plan was confirmed without retaining the Bank's floating lien. The Bank's remaining lien rights terminated when the prepetition and postpetition debts were paid in full. All of this occurred prior to the time Debtor filed its Chapter 11 petition in this case. Therefore, the Bank does not have a secured claim in this case based on the confirmed plan in Debtor's first Chapter 11 case.

 The Bank argues that its UCC financing statement filed April 11, 1989 remains viable to perfect its subsequent secured interest which arose from postconfirmation advances. To the contrary, the Court concludes the Bank can no longer rely on that financing statement because it terminated when the secured interest it perfected was extinguished. In *In re Apollo Travel, Inc.,* 567 F.2d 841, 842 (8th Cir.1977), a prepetition secured debt had been entirely repaid prior to the debtor filing a bankruptcy petition under the Bankruptcy Act. Neither the debtor nor the trustee requested a termination statement from the creditor. *Id.* at 843. Postpetition, the creditor sought payment of attorney fees from secondary promises in the prepetition secured agreement. *Id.* The court held that this secondary, contingent liability was not secured after the loans were repaid and bankruptcy intervened before the actual indebtedness arose. *Id.* at 845.

 Under the U.C.C., a debtor may request a termination statement to terminate a financing statement if there is no outstanding secured obligation and no commitment to make advances. *See* Iowa Code § 554.9404(1). Upon such a request by written demand, the secured party must send the debtor the termination statement stating it no longer claims a secured interest under the financing statement. *Id.* Since the secured party has no duty to file a termination statement unless requested, and the debtor has no duty to make such a request, no importance is attached to the absence of filing of a termination statement. *Intermountain Brick Co. v. Valley Bank,* 746 P.2d 427, 429–30 (Wyo.1987); *Texas Kenworth Co. v. First Nat'l Bank,* 564 P.2d 222, 227 (Okla.1977); *contra In re D.C.I. Danaco Contractors, Inc.,* 141 B.R. 7, 11 (Bankr.E.D.N.Y.1992) (stating without discussion or authority that UCC places an affirmative duty on

the debtor to demand a termination statement to terminate a secured agreement containing a dragnet clause).

Generally, the question of when a future advances clause in a U.C.C. statement terminates is governed by the intent of the parties. *First Nat'l Bank & Trust Co. v. Security Nat. Bank & Trust Co.*, 676 P.2d 837, 840 (Okla.1984). As discussed above, based on the effect of § 552(a) and the language of the confirmed plan, the Court concludes the future advances and after-acquired property provisions of the Bank's original secured agreement, perfected by the Bank's April 17, 1989 financing statement, terminated and became unperfected upon the filing of Debtor's first Chapter 11 petition. These provisions were not reinstated by the confirmed plan. The remainder of the financing statement terminated upon payment of the Bank's prepetition and postpetition debt in full as provided for in the confirmed plan. The fact that no termination statement was filed has no importance in this determination.

The Bank asserts that its postconfirmation lending is secured and perfected by Debtor's "ratification" of the original secured agreement and financing statement by execution of new notes. It further argues perfection is reinforced by the filing of the continuation statement on March 25, 1994, relating to the April 17, 1989 financing statement. The Court has found that the Bank's April 17, 1989 financing statement terminated as to future advances and after-acquired property at the time of the filing of the first Chapter 11 petition. The effect of this is to discontinue perfection of any subsequent secured interest of the Bank against Debtor's after-acquired property.

To perfect most secured interests in Iowa, a financing statement must be filed. Iowa Code § 554.9302. A financing statement is sufficient if it contains the names and mailing addresses of the debtor and secured party, "a statement indicating the types, or describing the items, of collateral," and is signed by the debtor. *Merchants Nat'l Bank v. Halberstadt*, 425 N.W.2d 429, 432 (Iowa App.1988); Iowa Code § 554.9402(1). Financing statements serve the purpose of giving public notice to other creditors that a secured interest is claimed in the debtor's collateral. *First State Bank v. Shirley Ag Serv., Inc.*, 417 N.W.2d 448, 451 (Iowa 1987). Likewise, the purpose of continuation statements is to give notice to all creditors that a financing statement continues to be valid after the expiration of five years. *State Savs. Bank v. Onawa State Bank*, 368 N.W.2d 161, 165 (Iowa 1985).

The validity of a financing statement depends primarily on its ability to give notice of the secured interest to other creditors. *In re Rieber*, 740 F.2d 10, 12 (8th Cir.1984) (applying Iowa law). Where a document, filed with the correct authorities, satisfies all the requirements of a valid financing statement and gives notice of a secured interest, a perfected secured interest is created. *Id.* The court in *Rieber* held that an amendment which contained all the requirements of a financing statement was sufficient to perfect the secured interest. *Id.* The dispositive question is usually whether a reasonable search would uncover the filing. *In re York Chem. Indus., Inc.*, 30 B.R. 583, 586 (Bankr.D.S.C.1983) (holding lien unperfected because a reasonable search would uncover a termination statement).

The U.C.C. states that a perfected secured interest continues unless there exists an intermediate period when it is unperfected. Iowa Code § 554.9303(2). Conflicting secured interests rank according to priority in time of filing or perfection, provided there is no period thereafter when there is neither filing nor perfection. Iowa Code § 554.9312(5)(a). Future advances, or a commitment for future advances, have the same priority as the first advance, if made while the secured interest is perfected. Iowa Code § 554.9312(7). "In other cases a perfected secured inter-

est has priority from the date the advance is made." *Id.*

This case presents difficult questions under the U.C.C. and its interaction with bankruptcy laws. *See Apollo Travel,* 567 F.2d at 842. It is further complicated by the fact that Congress apparently did not anticipate serial Chapter 11 cases when it enacted the Bankruptcy Code. *See W.F. Monroe Cigar Co.,* 166 B.R. at 113. The Bank's pre-petition lien on after acquired property was suspended when Debtor filed its first Chapter 11 case. This lien was not retained by the confirmed plan. The financing statement perfecting this pre-petition lien remained on file with the Secretary of State, was not formally terminated by the filing of a termination statement and had not lapsed by passage of time prior to the time the Bank made subsequent advances to Debtor. Even though a third party's search of the records would show a continuing lien on after-acquired property through future advances, however, such lien did not exist.

■ The Bank cannot rely on the April 1989 financing statement as perfection of its interest in after-acquired property arising from postconfirmation advances. Postconfirmation, the lien no longer existed and the April 1989 financing statement did not operate to perfect secured interests on after-acquired property. Therefore, the Bank's asserted secured interest in after-acquired property from postconfirmation advances does not have priority over the IRS tax liens perfected in August and December 1989.

■ The last issue is whether the Bank's secured interest is perfected through the continuation statement it filed March 25, 1994. The Court is unable to locate a copy of this in the record. From the briefs filed, however, it is evident that Debtor did not sign the continuation statement filed by the Bank. The U.C.C. requires Debtor's signature for a filing to be sufficient as a financing statement. Unlike the amendment filed in *Rieber,* the contin-

uation statement does not contain all of the requirements of a financing statement. Therefore, the continuation statement did not perfect the Bank's secured interest in after-acquired property arising from postconfirmation advances.

The Bank urges that the continuation statement in combination with the April 17, 1989 financing statement constitutes perfection of its postconfirmation secured interest. The 1989 financing statement contains Debtor's signature. It was not terminated in the records of the Secretary of State. A third party's search would arguably give notice that the Bank was continuing to claim a secured interest in after-acquired property, at least after the continuation statement was filed.

Because the continuation statement is not part of the record at this time, the Court is unable to made a determination regarding its effect, in combination with the 1989 financing statement, in perfecting the Bank's postconfirmation secured interest. The Court will limit is ruling on summary judgment to the effect of the unsigned continuation statement and the effect of the 1989 financing statement, each standing alone. The 1989 financing statement is not effective to perfect postconfirmation secured interests. The unsigned continuation statement is not effective as a financing statement. Further, because the 1989 financing statement terminated prior to the time the Bank made postconfirmation advances to Debtor, the priority of the Bank's secured interest, if any, arises on the date the advance was made, and does not relate back to the April 1989 filing date. *See* Iowa Code § 554.9312(7).

**SUMMARY**

The rights of the parties are discernable on the record. There is no genuine issue of material fact as the confirmed plan, the U.C.C. filings and the record of the tax liens are determinative. The facts are not in dispute and partial summary judgment is appropriate.

It is clear that the confirmed plan has binding effect. The reach of Federal tax liens is also well established. In this situation, the law is not clear regarding the effect the Bank's April 1989 UCC financing statement retains after the Bank's rights are determined in a Chapter 11 confirmed plan. No clear legal authority exists regarding the need for a termination statement in this situation. On the other hand, no authority exists to allow a post-confirmation lender to resuscitate a pre-petition floating lien.

The confirmed plan has a binding, res judicata effect on all the parties, offering Debtor a fresh start. Section 552(a) cuts off the Bank's prepetition lien in after-acquired property, but it does not affect the IRS's similar rights arising from its tax lien. In the absence of Court authorization, the Bank's floating lien does not survive confirmation of the plan.

The U.C.C. is premised on the notion of notice to third parties. Although the Bank's 1989 financing statement was not terminated of record, inquiry by a third-party lender should have disclosed the fact that a Chapter 11 plan had been confirmed by the Court. Section 552(a) would have assured such a lender that the Bank's pre-petition floating lien no longer existed. The language of the Plan and the filings in the Secretary of State's office appear inconsistent. A postconfirmation lender, however, would be entitled to rely on the effect of § 552(a) and the Plan to gain priority over the Bank in making postconfirmation advances. When the Bank filed its continuation statement, the U.C.C. filings would clearly contradict the confirmed plan. A third-party lender arguably would have notice that the lien the Bank claimed could have priority over subsequent advances. Because the continuation statement is not part of the record, however, the Court cannot determine its effect at this time.

The validity of the IRS tax liens were set on the day Debtor filed its Chapter 11 petition in this case. Subsequent expira-

tion by operation of law or by the terms of the notices of tax liens does not invalidate these liens. The effect of tax liens on after-acquired property is well settled. Neither the language of the confirmed plan nor section 552(a) prohibit the attachment of the tax liens to after-acquired property.

The IRS lien was perfected in August and December 1989. It remains a valid secured claim in this case and attaches to property of Debtor acquired after confirmation of the plan in Debtor's first Chapter 11 case. This lien did not terminate when the refiling deadline expired during the pendency of this case. The IRS lien is perfected with priority over any secured interest of the Bank. It attaches to all property of Debtor, including property acquired postconfirmation.

The Bank's prepetition lien in after-acquired property was suspended when Debtor filed its first Chapter 11 petition. The confirmed plan failed to retain the lien. Therefore, the lien in after-acquired property was terminated in Debtor's first Chapter 11 case. The Bank's lien, which was retained in the confirmed plan, terminated according to the language of the plan when Debtor paid in full prior to filing its second Chapter 11 petition.

The April 1989 financing statement does not by itself perfect the Bank's secured interest in after-acquired property arising from postconfirmation advances. The continuation statement the Bank filed in March 1994, which was not signed by Debtor, does not by itself perfect the Bank's interest in Debtor's after-acquired property. Based on the record, the Court is unable to determine whether the April 1989 financing statement and the March 1994 continuation statement were effective in combination to perfect the Bank's interest. If the Bank can prove the combination of the filed statements perfects its postconfirmation secured interest, the priority of such interest does not relate back

to the time the April 1989 financing statement was filed.

**WHEREFORE,** Trustee's Motion to Adjudicate Law Points, which the Court treats as a Motion for Partial Summary Judgment, is GRANTED.

**FURTHER,** the lien of the IRS, arising from the confirmed plan in Debtor's first Chapter 11 case, was perfected in August and December 1989. It remains a perfected secured interest in this case, attaching to all property of Debtor including property acquired postconfirmation. This secured interest has priority over any secured interest claimed by the Bank.

**FURTHER,** the Bank's senior secured interest in after-acquired property terminated with Debtor's first Chapter 11 case.

**FURTHER,** the Bank's senior secured interest retained in the confirmed plan terminated upon payment in full.

**FURTHER,** neither the April 1989 financing statement nor the March 1994 continuation statement perfects a secured interest of the Bank in property acquired by Debtor postconfirmation.

**FURTHER,** the Court declines to rule on whether the April 1989 financing statement and the March 1994 continuation statement in combination perfect the Bank's postconfirmation secured interest. However, if such perfection is proved, priority of such interest does not relate back to the time the Bank filed its April 1989 financing statement.